875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul G. FRANCIS, Administrator and Personal Representative
of the Estate of Paul B. Francis, Deceased,
Plaintiff-Appellant,
v.
PIKE COUNTY; James G. Dixon, Sheriff, Pike County; Robert
Smith, Deputy Sheriff; Charles Trocone, Deputy Sheriff;
Richard F. Blakeslee; Rick Bentley; James Rider; City of
Piketon, Ohio, Defendants-Appellees.
 No. 88-3739.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1989.
 
 Before NATHANIEL R. JONES, WELLFORD and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, as administrator and personal representative of decedent's estate, brought this action as a result of decedent's arrest and subsequent suicide in the Pike County jail. Plaintiff alleged, inter alia, that defendants used excessive force in restraining decedent, that defendants were grossly negligent in failing to prevent decedent's suicide, and that defendants were negligent in hiring and training employees and in establishing procedures to prevent suicides. The district court granted summary judgment for the defendants on all of plaintiff's claims. Plaintiff appeals, and upon review, we find no error in the grant of summary judgment.
 
 I.
 
 2
 Paul B. Francis, decedent, was stopped while driving his car on April 14, 1987, by Patrolman Rick Bentley of the Piketon Police Department. It was about 2:20 a.m., and Patrolman Bentley had observed decedent's car weaving as it traveled along the highway. Decedent fell as he exited his car, and subsequently failed a sobriety test. Patrolman Bentley placed decedent under arrest, and took him to the police department headquarters. Decedent refused a breathalizer test while at the police department, and became beligerent, attempting to strike an officer with a chair. Decedent was then informed that he would be incarcerated in the Pike County jail, and decedent resisted being handcuffed. Decedent was restrained and handcuffed by four officers, including Bentley and Robert Smith. Decedent was transported to the Pike County jail, and placed in his cell by Officer Smith at about 3:20 a.m. By this time, decedent had calmed down and his handcuffs were removed. Approximately an hour later, decedent was found hanging from his belt, and attempts to revive him failed. An autopsy indicated that decedent died from asphyxiation by hanging.
 
 
 3
 This action was brought by Paul G. Francis, decedent's son. Plaintiff is suing the City of Piketon, along with the Piketon Police Department, Richard Blakeslee who is the chief of police, and Patrolmen Bentley and James Rider. Plaintiff is also suing Pike County, Sheriff James Dixon, plus Officers Smith and Trocone. Plaintiff alleges that the officers used excessive force when handcuffing decedent, and that the officers were negligent in failing to remove decedent's belt.
 
 
 4
 The defendants subsequently filed a motion for summary judgment in this case. During the nine months that this case was pending, plaintiff conducted virtually no discovery; he requested one set of documents from defendants, but took no depositions or other discovery.[1] Plaintiff, in opposing summary judgment, offered a memorandum and two affidavits of relatives who were not present during the events in issue. Defendants offered affidavits from both the officers involved and other defendants, plus police records pertaining to the incident. The district court granted summary judgment for all defendants on July 13, 1988, and plaintiff appeals.
 
 II.
 
 5
 Plaintiff asserts on appeal that the district court erred in granting the defendants' summary judgment motion.[2]
 
 
 6
 Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the Supreme Court explained in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is "material" when it is capable of affecting the outcome of the suit under governing law; a dispute about a "material fact" is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.
 
 
 7
 Plaintiff specifically alleges that there are genuine issues of fact as to whether the officers used excessive force in handcuffing decedent. The standard for excessive force is whether the actions of the law enforcement officers "shock the conscience of the court." Lewis v. Downs, 774 F.2d 711, 713 (6th Cir.1985); Wilson v. Beebe, 770 F.2d 578, 586 (6th Cir.1985) (en banc ). Excessive force of this type violates the fourteenth amendment and is therefore actionable under 42 U.S.C. Sec. 1983. Dugan v. Brooks, 818 F.2d 513, 517 (6th Cir.1987). In Lewis, this court stated that factors to consider in determining if the conduct rises to the level of a constitutional deprivation include "the need for the force, the relationship between the need and the amount applied, the extent of the injury inflicted, and the motivation of the police officer in applying the force." Lewis v. Downs, 774 F.2d at 713; see also Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.), cert. denied, 414 U.S. 1033 (1973).
 
 
 8
 Here the only allegation of excessive force relates to the handcuffing incident. Affidavits from officers Bentley and Smith indicate that decedent resisted being handcuffed, and tried to strike Officer Bentley with a chair. Both officers stated that only the amount of force needed to place the handcuffs on decedent was used. (App. 76, 85). In addition, another officer applied a stun gun to decedent's lower back during the handcuffing incident.
 
 
 9
 The autopsy report detailed decedent's injuries. Decedent had "a very faint reddish contusion about 0.3 inch in maximum dimension" over the bridge of his nose. (App. 133). In addition, there were several contusions over decedent's wrist, hand and lower forearm areas. The bruises were generally less than one inch in diameter, and the largest abrasion was only a third of an inch long.
 
 
 10
 This evidence is insufficient to support a finding that defendants used excessive force. Plaintiff has not come forward with any other evidence to support his claim.[3] Considering that decedent fell when getting out of his car, that plaintiff admits that decedent resisted being handcuffed, and that the injuries received were relatively minor, summary judgment was properly granted to the defendants on this issue.
 
 III.
 
 11
 Plaintiff also asserts that decedent's eighth amendment right to be protected from cruel and unusual punishment was violated and, therefore, summary judgment should not have been granted on this issue. Specifically, plaintiff alleges that defendants committed "intentional acts, negligence, violation of constitutional rights and other wrongful acts" which caused decedent's death. (Complaint at App. 5).
 
 
 12
 Initially we note that decedent was not under the custody or control of the Piketon defendants at the time of his suicide. Decedent was incarcerated in the Pike County jail, and plaintiff has not alleged any act or omission on the part of the Piketon defendants that contributed to decedent's suicide.
 
 
 13
 Decedent was under the custody and control of the Pike County defendants at the time of his death. A law enforcement officer's deliberate indifference to serious medical needs of an inmate amounts to cruel and unusual punishment under the eighth amendment. Estelle v. Gamble, 429 U.S. 97 (1976). However, pretrial detainees who have not been convicted of any crimes are not within the protections of the eighth amendment. Roberts v. City of Troy, 773 F.2d 720 (6th Cir.1985). In Roberts, we explained that "the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." Id. at 723.
 
 
 14
 Due process rights require that an unconvicted detainee not be punished. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). Wolfish held that the proper inquiry of a claimed due process violation is whether the conditions or restrictions amount to a punishment of the detainee. Id. A law enforcement officer's unconstitutional failure to act to prevent a detainee from committing suicide requires "deliberate indifference" on the part of the officers or other defendants. Roberts, 773 F.2d at 724-25. A deliberate failure to act can achieve the result of punishment of the detainee. Id. at 725; see also Colburn v. Upper Darby Township, 838 F.2d 663, 669 (3d Cir.1988), cert. denied, 109 S.Ct. 1338 (1989).
 
 
 15
 Here the evidence indicates that Officer Smith did not remove decedent's belt before placing him in the cell at the Pike County jail. However, there is no evidence that the officer knew or should have known that decedent was contemplating suicide. Officer Smith, in his affidavit, stated that he knew decedent from his past visits to the jail, and that decedent "did not act disturbed or seem suicidal when he was booked." (App. 86). Plaintiff, in his affidavit, stated that decedent had "seemed normal and in good spirits" prior to April 14, 1987, and had recently received VA benefits, Social Security back pay, and was looking for a house to purchase. (App. 123). On the basis of this evidence, plaintiff has failed to establish that there is a genuine issue as to whether Officer Smith showed deliberate indifference to decedent. There is no evidence which would permit a reasonable jury to find in plaintiff's favor.[4]
 
 IV.
 
 16
 Plaintiff asserted in his complaint that "[d]efendants were negligent in hiring and training of their employees, and, further, were otherwise negligent in the implementation of safeguards and procedures in the arresting of individuals and the handling of individuals who are in their custody." (Complaint, App. 5). The district court granted summary judgment for defendants because plaintiff failed to support his claim with any evidence and plaintiff's allegation of simple negligence does not state a cause of action under 42 U.S.C. Sec. 1983.[5]
 
 
 17
 The Supreme Court has recently held that "the inadequacy of police training may serve as the basis for Sec. 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 109 S.Ct. 1197 (1989) (footnote omitted). In addition, there must be a close relationship between the deficiency in the training program and the injury suffered. It is not enough for the plaintiff here to merely point to something that Pike County could have done to prevent decedent's suicide. Plaintiff has neither alleged nor provided any evidence that defendants were deliberately indifferent and, therefore, summary judgment was properly granted on this issue.
 
 
 18
 Finally, plaintiff asserts that this case should be remanded to the district court in order to permit him to take defendants' depositions. Although plaintiff complains that the district court prevented him from taking depositions, the district court stated that it was "at a loss to understand this statement" since plaintiff had not produced any evidence of unsuccessful attempts to take depositions. (Order of July 12, 1988, at App. 120). A review of the record, including the docket sheet, reveals that plaintiff had ample time to request depositions, but made no effort to do so. Accordingly, we find no merit in plaintiff's assertion that this case should be remanded for further discovery.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The district court judge outlined what he termed "foot-dragging by the plaintiff" concerning discovery and pretrial motions in an order dated July 12, 1988. (App. 117)
 
 
 [2]
 This is plaintiff's sole issue on appeal, and he does not explain on what specific claims he believes summary judgment was erroneously granted. Plaintiff's argument to this court consists of a verbatim reiteration of his motion in opposition to summary judgment. Therefore we will address all claims discussed within the body of his argument
 
 
 [3]
 Decedent had three passengers with him at the time of his arrest, and two of them were present when the handcuffing incident took place. Plaintiff has not offered their affidavits. Defendants have provided these passengers' statements, which indicate that they would not be supportive of plaintiff's claim of excessive force
 
 
 [4]
 Defendants Dixon, Smith, and Trocone argue in their brief to this court that they are entitled to the qualified immunity defense of good faith because their actions did not violate clearly established constitutional law. In order for plaintiff to overcome this defense, plaintiff must show that no reasonable officer could have believed that his conduct was lawful, considering the law as it existed when the officer took his actions
 See Poe v. Haydon, 853 F.2d 418, 423 (6th Cir.1988), cert. denied, 109 S.Ct. 788 (1989). Plaintiff has not addressed defendants' assertion of qualified immunity, and defendants did not raise this defense in their motion for summary judgment. Due to our disposition of this case on other issues, we do not reach this qualified immunity issue.
 
 
 [5]
 The only mention plaintiff makes of this claim in his brief is at page nine, where he states that his claim against Sheriff Dixon and Pike County is not based solely on a respondeat superior theory, citing his complaint at page three, as quoted above