613 So.2d 1272 (1993)
Charlie J. GILMORE, as Administrator of the Estate of Charlie M. Gilmore, deceased
v.
SHELL OIL COMPANY, a corporation, et al.
1910915.
Supreme Court of Alabama.
February 26, 1993.
*1273 William P. Traylor III, Deborah S. Braden and P. Mark Petro of Yearout, Myers & Traylor, P.C., Birmingham, for appellant.
C. William Gladden, Andrew J. Sinor, Jr. and Stephen E. Whitehead of Balch & Bingham, Birmingham, for appellees.
INGRAM, Justice.
Charlie J. Gilmore, as personal representative of the estate of Charlie M. Gilmore (the deceased, Charlie M. Gilmore, will hereinafter be called "Michael"), sued Shell Oil Company, T & P, Inc., Terry E. Parker, and Bobby McSwain, alleging that the defendants had negligently or wantonly allowed Michael, a purported business invitee, to fatally injure himself with a handgun that he had found on the defendants' premises. Gilmore also alleged that Parker negligently entrusted the handgun to McSwain and that the unguarded and accessible handgun created a private nuisance.
*1274 Gilmore appeals from a summary judgment for the defendants. Gilmore argues that he presented sufficient evidence to defeat the defendants' motion for summary judgment; specifically, he says he presented evidence creating two genuine issues of material fact: (1) whether Michael's death was "suicide"; and (2) whether the defendants had breached their standard of care owed to Michael, who the plaintiff says was a business invitee.
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. A "genuine issue of material fact" is a disputed factual issue that is "outcome determinative." "A fact is outcome determinative if the resolution of that fact [before the trial court] will establish or eliminate a claim or defense...; if the fact is determinative of an issue to be tried, it is `material.'" John J. Coleman III, Summary Judgment in Alabama: The Nuances of Practice Under Rule 56, 20 Cumb.L.Rev. 1, 5 (1989) (citing William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 480 (1982) ("An issue is not material simply because it may affect the outcome. It is material only if it must inevitably be decided") (emphasis in original)).
This Court, reviewing a summary judgment, will view the entire record, as it was before the trial court when the summary judgment was entered, in the light most favorable to the nonmovant and will resolve all reasonable doubts against the movant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991). In order to defeat a properly supported motion for summary judgment, the nonmovant must show that a genuine issue as to a material fact exists and that resolution of this disputed fact is determinative of an issue to be decided. This factual dispute must be created by "substantial evidence." See § 12-21-12, Ala.Code 1975. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
The facts of this case are as follows: Michael, who was 17 at the time of his death, was an acquaintance of McSwain, who was working at T & P, Inc., a Shell gasoline station/convenience store owned by Terry Parker. The plaintiff says Michael was at the store to visit McSwain. After arriving at the store, Michael went behind the cashier's counter to make some telephone calls. While he was behind the counter, McSwain was across the store sweeping the floor. McSwain testified that he looked up from his sweeping and saw that Michael had taken a handgun from beneath the counter.
Parker, who had worked the shift before McSwain's shift, alleged that he had inadvertently left the handgun. Parker testified that he had brought the handgun to the store for his protection. The handgun was kept on a shelf under the cashier's counter toward the back of the shelf, where it could not be seen by customers in the store.
According to McSwain, he looked up and saw Michael with the handgun. He testified that Michael had opened the chamber of the handgun and removed all the bullets. Michael then replaced one of the bullets, closed the chamber, put the handgun to his head, and pulled the trigger. The shot killed him.
The dispositive issue on appeal is whether a genuine issue of material fact exists as to the cause of Michael's death, assuming, but not deciding, that Michael was a business invitee and further assuming that the presence of the handgun in an accessible area was a breach of the defendants' duty owed to Michael.
This Court has held:
"Negligence alone does not afford a cause of action. Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily *1275 prudent person ought reasonably to foresee would result in injury."
Vines v. Plantation Motor Lodge, 336 So.2d 1338, 1339 (Ala.1976). "[H]owever negligent a party may have been in some particular, he is accountable only to those injured as a proximate result of such negligence. Where some independent agency intervenes and is the immediate cause of the injury, the party guilty of prior negligence is not liable." Hall v. Booth, 423 So.2d 184, 185 (Ala.1982).
Additionally, this Court has long recognized that a defendant who creates a dangerous "condition" is not responsible for a plaintiff's injury that results from the intervention of another agency, if at the time of the defendant's original negligence the intervening agency could not reasonably be foreseen. See, e.g., City of Mobile v. Havard, 289 Ala. 532, 538, 268 So.2d 805, 810 (1972); Morgan v. City of Tuscaloosa, 268 Ala. 493, 496, 108 So.2d 342, 345 (1959); Garrett v. Louisville & N.R.R., 196 Ala. 52, 53, 71 So. 685, 686 (1916). In such cases, we have held that the defendant's negligence is not the "proximate cause" of the plaintiff's injury, and, therefore, that the defendant is not liable. Vines, 336 So.2d at 1339.
Such an unforeseen agency, which breaks the chain of causation that otherwise might have linked the defendant's negligence to the plaintiff's injury, has been referred to as an "intervening efficient cause." See General Motors Corp. v. Edwards, 482 So.2d 1176, 1194 (Ala.1985). In order for conduct to be considered an intervening efficient cause, it must (1) occur after the defendant's negligent act, (2) be unforeseeable to the defendant at the time he acts, and (3) be sufficient to be the sole cause-in-fact of the plaintiff's injury. Id. at 1194-95; see also Vines, 336 So.2d at 1339.
In Louisville & N.R.R. v. Maddox, 236 Ala. 594, 183 So. 849 (1938), this Court held, "The idea of contributory negligence presupposes negligence of the defendant, and contributory negligence, though it may be a contributing or concurring cause, can never be an efficient intervening cause to break the chain of causation flowing from the defendant's negligence and insulate the same." Id. at 601, 183 So. at 854 (opinion on rehearing). However,
"the general rule, which is subject to certain exceptions, is that a plaintiff's own conduct may be a superseding [or intervening efficient] cause, absolving a negligent defendant from liability, even though [the plaintiff's] conduct amounts to contributory negligence.... However, in order to be a superseding cause, a plaintiff's negligence must be more than mere contributory negligence, ... and, in addition to being unforeseeable, such conduct must rise to such a level of culpability as to replace the defendant's negligence as the legal cause of the accident."

57A Am.Jur.2d Negligence § 650 (1989) (emphasis supplied). We now expressly adopt the general rule as stated in 57A Am.Jur.2d and hold that a plaintiff's conduct can constitute an intervening efficient cause, but only if, in addition to meeting the Edwards criteria set forth above for an intervening efficient cause, the plaintiff's conduct (1) is "so highly extraordinary or unexpected that it can be said to fall without the realm of reasonable foreseeability as a matter of law," 57A Am.Jur.2d Negligence § 652 (emphasis added); and (2) is more than mere contributory negligence and is of a higher culpability level than the defendant's negligence. Id. § 650. We distinguish this rule from the rule established in Maddox that the plaintiff's own negligence cannot be an intervening efficient cause. See Maddox, 236 Ala. at 601, 183 So. at 854.
The defendants argue that Michael's conduct was an intervening efficient cause, breaking the chain of causation that otherwise might have linked the defendants' negligence and Michael's death. Assuming that Parker acted negligently and created a dangerous condition by leaving the handgun loaded and accessible, Michael's subsequent act of intentionally and deliberately shooting himself in the head was unforeseeable as a matter of law and was sufficiently culpable to supersede *1276 the defendants' negligence as the proximate cause of Michael's death.
Gilmore argues that a fact question exists as to whether Michael's death was a "suicide." In his brief to this Court, Gilmore argues that there is a presumption against suicide and that evidence in the record supports the inference that Michael did not intend his own death. For example, McSwain testified that Michael was "happy-go-lucky" and that, moments before his death, Michael had been discussing his plans for the holidays, his plans to return to high school, and his plans to purchase tennis shoes. Gilmore testified that his son had never threatened or attempted to commit suicide and that he believes his son did not intentionally shoot himself.
In Krieg v. Massey, 239 Mont. 469, 781 P.2d 277 (1989), the Montana Supreme Court held that "suicide," with certain exceptions, is a "deliberate intervening act exonerating the defendant from legal responsibility." Id., 239 Mont. at 471, 781 P.2d at 278. In Krieg, the plaintiff, Krieg, brought an action against the owners/operators (the Masseys) and the manager (Young) of an apartment complex where the plaintiff's decedent, Van Hoose, had committed suicide. The facts set out in the opinion indicate that Van Hoose told Young that he was experiencing pain in his leg and in his stomach. Young offered to take Van Hoose to a hospital, but stated that she told Van Hoose that they could not leave until Young's daughter arrived. A little while later, Young walked past Van Hoose's open door and found him walking around the room, waving a pistol. Young took the pistol away from Van Hoose, put it on the top of his closet, and then left the room. About an hour later, investigating a "thud," Young found that Van Hoose had killed himself with the pistol.
Krieg, Van Hoose's personal representative, brought a wrongful death action against Young and the Masseys. The trial court entered a summary judgment for all the defendants; the plaintiff appealed to the Montana Supreme Court, which affirmed the judgment.
On appeal, Krieg argued that when Young took the pistol away from Van Hoose, "she imposed upon herself a duty to prevent the suicide ... [and] she breached this duty because she was negligent in her intervention." Id., 239 Mont. at 472, 781 P.2d at 278. Krieg argued that Young could have prevented the suicide by taking the pistol with her from Van Hoose's room.
In affirming the summary judgment, the Montana Supreme Court adopted the general rule that, in the area of civil liability for suicide, "[n]egligence actions for the suicide of another will generally not lie since the act [of] suicide is considered a deliberate intervening act exonerating the defendant from legal responsibility." Id., 239 Mont. at 471, 781 P.2d at 278. The Krieg court noted that there are two exceptions to the general rule: "The first exception deals with causing another to commit suicide and is not applicable in the present case. The second exception allows the imposition of a duty to prevent suicide but only in a custodial situation where suicide is foreseeable [, typically in the case of] hospitals or prisons." Id. The first exception arises in cases where a defendant's conduct "causes a mental condition in the decedent that proximately results in an uncontrollable impulse to commit suicide or that prevents the decedent from realizing the nature of his act." Id., 239 Mont. at 473, 781 P.2d at 279 (citing Liability of Attorney for Suicide of Client Based on Attorney's Professional Act or Omission, 41 A.L.R.4th 352); see also Civil Liability for Suicide, 11 A.L.R.3d 751 (discussion and example of "irresistible impulse" decisions). This exception, as noted above, was not applicable to the facts of the Krieg case. Also, the Montana court held that the second exception did not apply because the facts of the case indicated that Young was not in a custodial relationship with Van Hoose and did not foresee, and, based upon her lack of expertise, could not have been expected to foresee, Van Hoose's suicide.
On the issue of foreseeability, the Montana court noted that Young had testified "that she did not think [the decedent] should have the gun, but that she did not *1277 think he was planning on killing himself." Krieg, 239 Mont. at 473, 781 P.2d at 279. Further, the court noted, "nothing indicates that [Young] had any special training to foresee that Mr. Van Hoose intended suicide." Id. Therefore, the court concluded that no genuine issue of material fact existed regarding foreseeability. Id.
In our own case, there is no evidence that the defendants had a special custodial relationship with Michael, nor is there any evidence that any of the defendants possessed expertise in the area of recognizing suicidal tendencies and preventing suicide. The manner of Michael's death is undisputed. Michael died as a result of his own deliberate action of placing a loaded gun to his head and pulling the trigger. In addition to the testimony of McSwain as to Michael's actions, we note that Michael's death certificate lists the cause of death as suicide, and the coroner testified that Michael died as a result of a "hard contact gunshot wound to the right temporal area," which is indicative, according to the coroner, of an intentional or deliberate shot, because accidental shootings do not usually have the gun touching the skin. Also, based upon his external examination of the wound, the coroner testified that the wound was probably self-inflicted, based upon the angle of the bullet, the gape of the skin at the point of entry, and the sooty deposits around the wound. The evidence presented by the defendants is sufficient to show that Michael's death was the result of his own intentional and deliberate, as opposed to merely negligent or accidental, act. No substantial evidence suggested otherwise. Therefore, the evidence must be taken as establishing that Michael's death was the foreseeable and natural consequence of his intentionally discharging a loaded handgun while it was pressed against the side of his head. We must conclude that the defendants made a prima facie showing that Michael committed suicide.
The evidence presented by Gilmore, in opposition to the defendants' showing, consists largely of affidavits to the effect that Michael would not have committed suicide. These affidavits are from people who knew Michael and were close to him. However, this evidence is largely only speculation as to Michael's state of mind at the time he shot himself. We have held, "Mere speculation that an issue of fact exists is not enough to defeat a summary judgment motion, nor may the opposing party rest upon mere conclusory allegations to prove that a genuine issue of fact exists." Charles J. Arndt, Inc. v. City of Birmingham, 547 So.2d 397, 399 (Ala.1989). Therefore, we are compelled to hold that Gilmore has failed to present substantial evidence that a genuine issue of material fact exists as to whether Michael's death was a suicide.
In a recent case, Watters v. TSR, Inc., 904 F.2d 378 (6th Cir.1990), a mother of a teenager who had committed suicide sued the manufacturers of the board game "Dungeons and Dragons," alleging that the board game had so dominated the mind of the teenager that it drove him to suicide. The Sixth Circuit Court of Appeals, holding that the suicide was an intervening cause, stated:
"The fact is, unfortunately, that youth is not always proof against the strange waves of despair and hopelessness that sometimes sweep seemingly normal people to suicide, and we have no way of knowing that Johnny would not have committed suicide if he had not played Dungeons & Dragons....
"... Mrs. Watters' affidavit shows affirmatively that Johnny Burnett, who lived in her household throughout his life, never caused Mrs. Watters any problems. He went to school regularly, and he took care of a paper route. The record contains no affidavit from a psychiatrist or similar expert suggesting that he suffered from any psychosis. As far as the record discloses, no one had any reason to know that Johnny Burnett was going to take his own life. We cannot tell why he did so or what his mental state was at the time. His death surely was not the fault of his mother, or his school, or his friends, or the manufacturer of the game he and his friends so loved to play. Tragedies such as this *1278 simply defy rational explanation, and courts should not pretend otherwise."
Id. at 384.
The death of Michael Gilmore is also an unexplainable tragedy. We do not understand, nor do we attempt to rationalize, his deliberate and destructive final act. However, we recognize that such acts are not the ordinary and naturally flowing consequences of the defendants' negligent conduct in leaving the handgun under the cashier's counter where it was accessible to those persons who might find themselves behind the cashier's counter. What relieves the defendants of any liability for Michael's death is that Michael, by his own hands, acted intentionally and deliberately in a manner that was calculated to result in his own death. Except for circumstances where the relationship between a decedent and a defendant is such that we expect the defendant to take affirmative steps to protect the decedent from deliberate and self-destructive injury at the decedent's own hand, we do not expect the ordinary person to be able to predict, much less guard against and prevent, another person's deliberate and self-destructive actions. Therefore, we hold that, except in the previously discussed situations, suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law, and civil liability will not be imposed upon a defendant for a decedent's suicide. While there may have been a fact question as to whether someone would be injured accidentally or negligently by the handgun, for example, by an unplanned discharge of the gun or even by a criminal act of a third party, it was unforeseeable as a matter of law that the handgun would be used to deliberately self-inflict a mortal wound.
Because such an act was unforeseeable as a matter of law, we find that the questions of fact raised by Gilmore in opposition to the defendants' motion for summary judgment are not "genuine issues of material fact" and therefore will not defeat that properly supported motion. See Rule 56, Ala.R.Civ.P. The summary judgment in favor of the defendants is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES and ADAMS, JJ., concur.
HOUSTON, J., concurs specially.
MADDOX and STEAGALL, JJ., concur in the result.
HOUSTON, Justice (concurring specially).
I find no initial legal liability on the part of any defendant, and I would affirm the summary judgment on that ground, although I do agree that Michael Gilmore's act was unforeseeable as a matter of law.