Teresa G. SUSSMAN, f/k/a Teresa
M. Gaffney, Plaintiff,

v.

SALEM, SAXON & NIELSEN, P.A.,
Richard J. Salem, Bernice S. Saxon
& Richard A. Nielsen, Defendants.

No. 91–776–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 28, 1994.

Anthony F. Gonzalez, Law Office of Anthony F. Gonzalez, Tampa, FL, and Neil Harvey Chonin, Chonin & Sher, P.A., Coral Gables, FL, for plaintiff.

`Mark A. Hanley and Thomas M. Gonzalez, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for defendants.

## ORDER

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on Defendants' Motion for Reconsideration or Clarification with Leave to File Second Motion for Summary Judgment, of Court's Order on Defendants' Motion for Summary Judgment and Memorandum of Law. (Docket No. 138). Defendants seek a reconsideration of this Court's Order on Defendants' Motion for Summary Judgment dated April 13, 1993. (Docket No. 131).

## *STATEMENT OF FACTS*

Plaintiff alleges that certain actions of Defendants subjected Plaintiff to a hostile working environment and discrimination on account of her pregnancy, steadily increasing in intensity and culminating in her discharge. Plaintiff further alleges that the conduct of the Defendants was done with malice or with reckless indifference to her federally protected rights. Plaintiff also alleges that as a result of Defendants' discriminatory actions and subsequent termination, she suffered the loss of salary and fringe benefits. Plaintiff brought a civil rights suit alleging constructive discharge resulting from disparate treatment which violated the Pregnancy Discrimination Act.

## *RELEVANT PROCEDURAL HISTORY*

Plaintiff's original Complaint, filed on June 21, 1991, ("Complaint" Docket No. 1) through her counsel at that time Mark F. Kelly, alleged a violation of Title VII of the Civil Rights Act of 1964, as amended, and as codified as 42 U.S.C. § 2000e–2000e–17 (1982). Specifically, the Plaintiff alleged violations of the Pregnancy Discrimination Act, codified as 42 U.S.C. § 2000e(k), § 2000e–2(a) (1982) and the Florida Human Rights Act of 1977, Chapter 760, FLA.STAT. recently amended by the Florida Civil Rights Act of 1992 (ch. 92–177, Laws of Florida).

Plaintiff alleges that, while an employee of the Defendant SALEM, SAXON AND NIELSEN, P.A., she suffered disparate treatment as a result of her pregnancy. Additionally, she alleges that Defendants' actions subjected Plaintiff to a hostile and offensive working environment. Furthermore, it is alleged that Defendants treated her in a manner which reflected a callous disregard for instructions given to by her physician to limit her working hours as a result of pregnancy complications. As a result, it is alleged that Defendants made Plaintiff's working conditions so intolerable so as to be considered, as a matter of law, a constructive discharge from her position held at SALEM, SAXON AND NIELSEN. (Docket No. 114).

From approximately June, 1991 until April 13, 1993, the scope and time period of discovery were of concern to the Defendants and Plaintiff. The discovery issues, as demonstrated by repeated motions to compel, extensions of time, and ultimate sanctions can only be described, by this Court, as an ongoing odyssey which can only be appreciated by a reading of the "cliff note" version of the discovery process.

On August 13, 1991, Defendants requested a videotape deposition of the plaintiff. (Docket No. 7). Subsequently, Defendants' motion turned into a joint motion for a court order regarding Defendants' motion for order allowing the videotaping of the Plaintiff's deposition and was denied by the court. (Docket Nos. 10, 12). On November 8, 1991, a scheduling order was issued setting the first discovery cutoff for April 1, 1992. In

the continuing discovery saga, the Court in two orders, noted that The Notice of Taking Depositions submitted by the Plaintiff to the Court was inappropriately filed. (Docket Nos. 20, 21). The Clerk of the Court later returned this discovery material to Plaintiff's counsel at that time, which was Neil Chonin.[1]

On February 28, 1992, Defendants filed a Motion to Compel Production of Documents, Answers to Deposition Questions, and Request for Order Regarding Future Discovery. (Docket No. 24). On June 26, 1992, the Court ordered that Plaintiff was to provide portions of notes she used to refresh her recollection during deposition, her state and federal tax returns, her street address, and the name of her babysitter. (Docket No. 50). Subsequently, Defendants asked the Court to compel the Plaintiff to abide by the June 26, 1992 order. (Docket No. 72 dated September 21, 1992). On October 19, 1992, the Court granted the Defendants' Motion to Compel and sanctioned the Plaintiff for failure to comply with the Court's previous order. (Docket No. 78).

As well, on March 3, 1992, Defendants proposed a Motion for the Extension of Time to file a Summary Judgment and for an Extension of Time to Complete Discovery. (Docket No. 26). On March 30, 1992 Plaintiff filed a motion to extend time to file interrogatories and to extend discovery cut-off time. (Docket No. 36). This Court ordered, on April 3, 1992, that Defendants' Discovery Motion (Docket No. 26) and Plaintiff's Motion for Extended Discovery (Docket No. 36) be granted. On September 10, 1992, a scheduling order set a second discovery cut-off on December 31, 1992. (Docket No. 70).

On November 17, 1992, Defendants filed a motion to compel answers to deposition questions from a non-party (Docket No. 81) and a motion to compel a psychological examination (Docket No. 83). Plaintiff was subsequently ordered, on December 14, 1992, to submit to a psychological examination. (Docket No. 95). There was an endorsed order on January 6, 1992, extending the discovery period for a third time. Defendants filed their motion for summary judgment on January 15, 1993. (Docket No. 107). On January 29, 1993, the court ordered that Defendants' motion to compel answers from non-party was granted in part and denied in part. (Docket Nos. 112, 113). As well, in the January 29, 1993, order several other discovery decisions were made by this Court. In all, Defendants filed five (5) motions to compel.[2] In light of this extensive procedural history, this Court considers Defendants' Motion to Reconsideration or Clarification, with Leave to File Second Motion for Summary Judgment, of Court's Order on Defendants' Motion for Summary Judgment (Docket No. 138) and Plaintiff's Response in Opposition to Motion for Reconsideration (Docket No. 143).

### ANALYSIS

I. *Summary Judgment:*

Summary judgment is mandated "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also *Delong Equipment Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499, 1498 (11th Cir.1989).

The applicable substantive law identifies which facts are material in the case. *Anderson* 477 U.S. at 248, 106 S.Ct. at 2510. Having done so, the court must review the evidence bearing on those issues, viewing the facts and inferences in a light most favorable to the nonmoving party. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.,* 831 F.2d

---

1. On October 30, 1991, through an Endorsed Order, the Court granted the Motion for Substitution of Counsel. Mark F. Kelly, Esquire, was terminated and Neil Chonin, Esquire, was added. Eventually, Neil Chonin, Esquire, was terminated and counsel to date is Anthony F. Gonzalez. See Docket No. 61 dated August 7, 1992.

2. While the Defendants filed five (5) motions to compel (Docket Nos. 24, 41, 72, 81, 83), the Motion to Compel and Certificate of Good Faith was later withdrawn (Docket No. 41).

77, 79 (5th Cir.1987). See also *Earley v. Champion International Corp.*, 907 F.2d 1077 (11th Cir.1990). However, before the court can find that there are no genuine material factual issues, it must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Ultimately, however, the moving party bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983).

In this particular case, the defendants must show that there is no issue of material fact and that it is entitled to a judgment. The burden then shifts to the plaintiff, as the non-moving party, to make a showing sufficient to establish the existence of an essential element to her claims, and on which she bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiff may not rest on the mere allegations or denials of her pleadings, but must, by affidavits or other means set specific facts showing that there is a genuine issue for trial. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.1991).

The plain language of Rule 56(e) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.*

As such, the case at bar has violated the very tenets of a just, speedy, and inexpensive determination outlined by the Supreme Court in *Celotex*. *Id.* In the previous opinion and order denying Defendants' Motion for Summary Judgment (Docket Nos. 107, 131), this Court clearly and distinctly noted that summary judgment must be granted if Defendants can show that constructive discharge cannot be proven, and then Plaintiff cannot establish evidence of constructive discharge. Additionally, this Court considered whether the Plaintiff had submitted sufficient evidence to create a genuine issue of whether those actions asserted by the Defendants as non-discriminatory are adequate to show a pretext of discrimination.

This Court noted that there was a genuine issue concerning the billable requirement placed upon the Plaintiff, and its relationship to her other duties. (Docket No. 131 at 6). Central to this issue is a comparison of Plaintiff's additional duties with other duties faced by other employees, the magnitude of any additional burden, and the manner in which the rights of all SALEM, SAXON & NIELSEN employees with disabilities were defined. (Docket No. 131 at 6). As a result, the Court concluded that the "issue of whether a constructive discharge did occur cannot be determined as a matter of law." (Docket No. 131 at 6).

Both parties provide little, if any, caselaw to support their assertions that the Motion to Reconsider should be denied or granted. (Docket Nos. 138, 143). This Court recognizes the Supreme Court's opinion that the Pregnancy Discrimination Act was not intended to provide accommodations to pregnant employees when such accommodations rise to the level of preferential treatment.[3] *International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 216–18, 111 S.Ct. 1196, 1213, 113 L.Ed.2d 158 (1991). Congress considered at length the considerable

---

**3.** *International Union, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 216–18, 111 S.Ct. 1196, 1213, 113 L.Ed.2d 158 (1991) (concurring opinion of WHITE, J.) ("the purpose of the PDA was simply to make the treatment of pregnancy consistent with general Title VII principles." (citation omitted); *California Federal S. & L. Assn. v. Guerra*, 479 U.S. 272, 286, 107 S.Ct. 683, 692, 93

L.Ed.2d 613 (1987) ("In contrast to the thorough account of discrimination against pregnant workers, the legislative history is devoid of any discussion of preferential treatment of pregnancy, beyond acknowledgments of the existence of state statutes providing for such preferential treatment ...").

cost of providing equal treatment of pregnancy and related conditions, but made the "decision to forbid special treatment of pregnancy despite the social costs associated therewith." *Id.* at 210, 111 S.Ct. at 1209. To require an employer to make reasonable accommodations for a pregnant employee is to require the employer to relinquish virtually all control over employees once they do become pregnant. The Pregnancy Discrimination Act was never intended to accomplish that end. The act was extended to cover the actions of employers.

However, this Court's reading of *International Union* notes the issue was an employer's policy regarding women who could potentially become pregnant, not those who were pregnant. *Id.* Generally, Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee with respect to compensation, terms, and conditions of employment, or benefits because of the person's sex. 42 U.S.C. § 2000e–2(a) (1988). An amendment, the Pregnancy Discrimination Act of 1978, specifically defines discrimination on the basis of pregnancy, childbirth, or medical conditions related to pregnancy as unlawful sex discrimination under Title VII.[4] The purpose of the Act was "to prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy." *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 646–47 (8th Cir.1987).

The question and answer section in the Code of Federal Regulations concerning the Pregnancy Discrimination Act explains that a pregnant employee's request for benefits based upon her physical condition must be processed the same as any other employee's request.[5] See *Questions and Answers on the Pregnancy Discrimination Act,* 29 C.F.R. pt. 1604 app., Nos. 5, 6 at 205 (1990). However, a pregnant employee is not required to show medical necessity in order to fall within the protection of Title VII. *EEOC v. Southwestern Elec. Power Co.*, 591 F.Supp. 1128, 1133–34 (W.D.Ark.1984). Title VII requires that pregnant women be accorded the "same rights, leave privileges and other benefits, as other workers who are disabled from working" are accorded. *EEOC v. Hacienda Hotel,* 881 F.2d 1504 (9th Cir.1989) (quoting S.Rep. No. 331, 95th Cong., 2d Sess. 3–4 (1977).

Had Plaintiff and Defendants done their research, they would have noted the extensive caselaw, history, and varied opinions surrounding the Pregnancy Discrimination Act, its intent, as well as purpose(s). Instead, both would prefer that this Court outline their arguments, provide them with caselaw, and rule upon their motions. A continued waste of judicial resources cannot go unchecked by this Court. Plaintiff and Defendants are skirting dangerously close to taking advantage of judicial patience. Defendants are free to "infer" from the Court's plainly and clearly stated order of April 13, 1993. Therefore, the issue of whether a constructive discharge did occur cannot be determined as a matter of law.

---

**4.** 42 U.S.C. § 2000e(k) (1988). As a definitional section to Title VII, the Act provides no separate cause of action for discrimination on the basis of pregnancy. The Act defines pregnancy and related conditions as among the impermissible bases of discrimination outlined in § 2000e–2. Title VII generally prohibits disparate treatment of employees on the basis of impermissible criteria such as pregnancy. See, e.g., *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 334–36 & n. 15, 97 S.Ct. 1843, 1845–55 & n. 15, 52 L.Ed.2d 396 (1977) (disparate treatment "most obvious evil Congress had in mind" in enacting Title VII).

**5.** *Questions and Answers on the Pregnancy Discrimination Act,* 29 C.F.R. pt. 1604 app., Nos. 5, 6 at 205 (1990).

6. Q. What procedures may an employer use to determine whether to place on leave as unable to work a pregnant employee who claims she is able to work or deny leave to a pregnant employee who claims that she is disabled from work?

A. An employer may not single out pregnancy-related conditions for special procedures for determining an employee's ability to work. However, an employer may use any procedure used to determine the ability of all employees to work. For example, if an employer requires its employees to submit a doctor's statement concerning their inability to work before granting leave or paying sick benefits, the employer may require employees affected by pregnancy-related conditions to submit such statement. Similarly, if an employer allows its employees to obtain doctor's statements from their personal physician for absences due to other disabilities or return dates from other disabilities, it must accept doctor's statements from personal physicians for absences and return dates connected with pregnancy-related disabilities. *Id.*

II. *Federal Rule of Civil Procedure 59(e):*

 A motion for reconsideration may be brought pursuant to Rule 59(e) or Rule 60(b), Fed.R.Civ.P. *Lewis v. United States Postal Service,* 840 F.2d 712, 713 n. 1 (9th Cir.1988). Under which Rule the motion falls turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b). In the case at bar, Rule 59(e) is applicable. Unlike Rule 60(b), Rule 59(e) does not set forth any grounds for relief and the district court has considerable discretion in reconsidering an issue. *American Homes Assur. Co. v. Glenn Estess & Associates, Inc.,* 763 F.2d 1237, 1238–39 (11th Cir.1985). The grant or denial of a Rule 59(e) motion is reversible only for abuse. *Huff v. Metropolitan Life Insurance Company,* 675 F.2d 119, 122 (6th Cir.1982).

 The courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice. See *Decker Coal Company v. Hartman,* 706 F.Supp. 745, 750 (D.Montana 1988) (quoting *All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (D.Hawaii 1987); see also, Wright, Miller & Cooper, *Federal Practice and Procedure,* Law of the Case § 4478 at 790 (1981). In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Decker,* 706 F.Supp. at 750.

 The district courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. See *Mackin v. City of Boston,* 969 F.2d 1273, 1279 (1st Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993). Accordingly, substantial discretion, though, does not mean unbridled discretion and a district court's decision to deny a motion to reconsider its judgment will be reviewed for abuse of discretion. A district court abuses its discretion when a relevant factor deserving a significant weight is overlooked, or when an improper factor deserving of significant

weight is overlooked, or when the court considers the appropriate mix of factors, but commits palpable error of judgment in calibrating the decisional scales. See *United States v. Hastings,* 847 F.2d 920, 924 (1st Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988).

 However, this Court recognizes that a reconsideration of a previous order is an extraordinary remedy to be employed sparingly. See *Mannings v. School Board of Hillsborough County,* 149 F.R.D. 235 (M.D.Fla.1993) (quoting *Taylor Woodrow Construction Corp. v. Sarasota/Manatee Airport Authority,* 814 F.Supp. 1072, 1073 (M.D.Fla.1993)). Only a change in the law, or the facts upon which a decision is based, will justify a reconsideration of a previous order. *Ware v. United States,* 1994 WL 34173 (M.D.Fla.1994). For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions. There is a badge of dependability necessary to advance the case to the next stage. *Kuenz v. Goodyear Tire & Rubber Company,* 617 F.Supp. 11, 14 (N.D.Ohio, E.D.1985).

In the case at bar Defendants do not assert, through their motion for reconsideration, that affidavits or other forms of discovery supporting their summary judgment, were not available prior to its filing. Nor do the Defendants claim that after the submission of their motion for summary judgment and before the Court's Order of April 13, 1993 that information supporting their assertion was now available. Had this been the case, Defendant should have notified the Court through a motion, i.e., a motion to stay judgment pending submission of supplemental affidavits, a motion to delay consideration of the motion for summary judgment, or a motion to reopen discovery, to allow the Defendants to obtain and file new information with the court.

As clearly indicated from the above section, titled *Relevant Procedural History,* discovery was extended on three separate occasions. Moreover, the discovery period was extensive in length and in the motions filed by both parties. On several occasions, the Defendants sought a motion to compel.

However, the Defendants chose to do none of these things outlined above. It seems that Defendants adopted a wait-and-see attitude. Now, after the Court has educated the Defendants on its point of view, they want to reconsider what the Court has determined to be genuine issues. After a judgment has been entered, the interest in finality may be deemed "compelling." *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117, 121 (5th Cir.1982), quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 n. 2 (5th Cir.1981). "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Id.*, quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967).

Evidence which was available to a party during the pendency of a motion for summary judgment may not later be introduced on a motion to reconsider. See *Prieto v. Storer Communications, Inc.*, 152 F.R.D. 654 (M.D.Fla.1994); *Morgan v. Harris Trust and Savings Bank of Chicago*, 867 F.2d 1023, 1028 (7th Cir.1989); *Shields v. Eli Lilly and Co.*, 704 F.Supp. 260, 262–63 (D.D.C.1988); *Refrigeration Sales Co., Inc. v. Mitchell–Jackson, Inc.*, 605 F.Supp. 6, 7 (D.C.Ill.1983). A motion to reconsider, which is based upon evidence that could have been introduced during the pendency of the motion for summary judgment, will be denied without an abuse of discretion. *Morgan*, 867 F.2d at 1028.

Moreover, the Defendants do not claim that there is an intervening change in controlling law or that it is imperative to correct a clear error. Defendants have not set forth facts or law of a strongly convincing nature to induce the Court to reverse its summary judgment decision. Accordingly, it is

**ORDERED** that Defendants' Motion for Reconsideration or Clarification, with Leave to File Second Motion for Summary Judgment (Docket No. 138), be **denied.**

**DONE and ORDERED.**