**Barbara RICHARDS, next friend and mother of Kevin Richards, deceased, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. Civ.A. 99–A–283–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 30, 1999.

Kenneth W. Hooks, Keith T. Belt, Jr., Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, for Plaintiffs.

Kenneth E. Vines, Julia J. Weller, U.S. Attorney's Office, Montgomery, AL, Joseph R. Lipton, U.S. Department of Justice, Torts Branch, Civil Division, Washington, DC, John W. Jolly, Jr., Skelding Labasky Corry Hauser Jolly Metz & Daws, Tallahassee, FL, Henry B. Steagall, III, Ozark, Al, Alex L. Holtsford, Jr., Rick A. Howard, Nix, Holtsford & Vercelli, P.C., Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion for Reconsideration filed by Defendant James Michael Wise (Doc. # 55) and a Motion for Reconsideration filed by the Plaintiff (Doc. # 61). In his motion, Defendant Wise asks this court to grant summary judgment to him on the basis of the court's previous ruling on a Motion brought by the United States of America. The Plaintiff, on the other hand, asks that the court reinstate the United States of America as a Defendant.

### II. *MOTION TO RECONSIDER STANDARD*

█ District courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. *Sussman v. Salem, Saxon & Nielsen,* 153 F.R.D. 689 (M.D.Fla.1994). Because "litigants cannot be repeatedly called upon to backtrack through the paths of litigation," reconsideration of a previous order is an extraordinary remedy to be employed sparingly. *Sussman,* 153 F.R.D. at 694.

█ Courts have recognized three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *See Sussman,* 153 F.R.D. at 694; *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

█ In moving for reconsideration, Defendant Wise raises for the first time the issue of applicability of a state law proximate cause rule to the federal claims brought against him. The Plaintiff, in moving for reconsideration, relies on a case not previously relied on to argue that summary judgment should not be granted to the United States. Although these are arguments not previously raised, the court will address the parties' arguments in the interest of justice.

## III. *DISCUSSION*

The Plaintiff has requested that this court reinstate the United States of America as a Defendant in this case. The claims brought against the United States of America are state law claims for negligence. In its previous Order, the court determined, pursuant to the Alabama Supreme Court's decision in *Gilmore v. Shell Oil Co.*, 613 So.2d 1272 (Ala.1993), that summary judgment was due to be granted as to the United States because the suicide of the Plaintiff's decedent was an intervening efficient cause.

In *Gilmore*, the Alabama Supreme Court adopted a rule from another jurisdiction that suicide is a deliberate intervening act exonerating the defendant from legal responsibility. *Id.* at 1276. There are two exceptions to this rule. One exception applies when the defendant's conduct causes a mental condition that results in suicide. *Id.* The second exception "allows for the imposition of a duty to prevent suicide but only in a custodial situation where suicide is foreseeable [, typically in the case of] hospitals or prisons." *Id.* (quoting *Krieg v. Massey*, 239 Mont. 469, 781 P.2d 277 (1989)).

In its previous Order, this court concluded that neither *Gilmore* exception applied, so that the general rule that suicide is an intervening efficient cause precluded the Plaintiff's claims against the United States. The Plaintiff, however, disagrees with this court's interpretation of *Gilmore*. The Plaintiff argues that even though Defendant Wise turned over custody of the Plaintiff's decedent to other defendants, who then turned over custody of the Plaintiff's decedent to the youth services center from which the Plaintiff's decedent escaped, allowing him to commit suicide, Defendant Wise may be held liable under the second exception recognized by the *Gilmore* court. The Plaintiff's argument is that the Alabama law of proximate cause does not require a custodial relationship at the time of the suicide to impose liability.

In the case relied on by the Alabama Supreme Court in *Gilmore*, the Montana Supreme Court explained that the second exception applies only in a custodial situation. *Krieg v. Massey*, 239 Mont. 469, 781 P.2d 277 (1989). In that case, the court held that a landlord had no duty to a tenant who committed suicide, because the landlord had no control over the tenant and there was no custodial relationship. *Id.* In applying the *Krieg* decision, the Alabama Supreme Court interpreted *Krieg* to hold that "the second exception did not apply because the facts of the case indicated that [landlord] was not in a custodial relationship with [the decedent] . . . ." *Gilmore*, 613 So.2d at 1276. Clearly, therefore, under the Montana rule which has been adopted as law in Alabama, there must be both foreseeability and a custodial relationship in order for the second exception to apply.

In moving to reconsider, the Plaintiff has directed the court's attention to *Foster v. Charter Medical Corporation*, 601 So.2d 435 (Ala.1992). First, the court notes that *Foster* is not an application of the rule announced and applied in *Gilmore*, since it was decided a year before *Gilmore*. Furthermore, as the Defendants point out, the *Foster* court went to great lengths to point out that the defendants in that case had actual control over the plaintiff. *Id.* at 439. The Plaintiff in this case argues, however, that *Foster* indicates that the control did not have to extend to the time at which the suicide occurred.

The court finds that the portion of the *Foster* opinion relied on by the Plaintiff is not dispositive after *Gilmore*, because it does not engage in the inquiry required by *Gilmore*. In *Foster*, the court stated that the question at issue was whether "while Foster was in their care, the defendants breached a duty that proximately caused his death, which, in this instance, happened to occur some time after he had left their care." *Id.* at 440. The rule as announced in *Gilmore*, however, is that a duty giving rise to responsibility for a death only arises if there is a custodial relationship. *Gilmore*, 613 So.2d at 1276. The question as framed in *Foster* assumes the existence of a duty, which is the very

question created in the application of the second exception to the suicide as an intervening efficient cause in *Gilmore.* In other words, the *Foster* court found liability because a duty existed before the suicide occurred, but, under *Gilmore,* no liability can attach unless there is a duty at the time of the suicide to prevent the suicide.

In addition to the facts that *Foster* preceded and is not consistent with *Gilmore,* there is a significant distinction to be drawn between this case and *Foster.* Under the Plaintiff's theory in this case, there were breaks in the chain of custody of Plaintiff's decedent. Although Defendant Wise initially had custody, he relinquished this custody to other law enforcement officers and eventually to the youth services defendants. In *Foster,* a patient was released from custody and killed himself without there having been any intervening custodial relationship. The *Foster* court never addressed, therefore, the limits to which the custodial or control relationship could extend. For all of these reasons, the court cannot conclude that *Foster* is dispositive in the applicability of *Gilmore* in this case.

This court's interpretation of *Gilmore* is not inconsistent with other courts' interpretations of this, or similar rules. For instance, in *Missildine v. City of Montgomery,* 907 F.Supp. 1501 (M.D.Ala.1995), two officers allegedly inflicted injury on a person in their custody and the person eventually killed himself, allegedly as a result of the injuries inflicted. The court concluded that the second *Gilmore* exception did not apply because the facts revealed that the defendants were not in a custodial relationship with the decedent. *Id.* at 1505.

Other courts applying rules similar to the *Gilmore* rule have reached similar conclusions. One court held that a defendant counselor could not be held liable for the suicide of a patient where the counselor did not have custody, control, guardianship, or authority over the decedent at the time of the suicide. *See Lee v. Corregedore,* 83 Hawai'i 154, 925 P.2d 324 (1996). In so holding, the court distinguished its facts from a case in which a defendant was held liable for the suicide of a juvenile, because, in that case, as long as the juvenile was in the custody of the Boys' Home, the director of social services was the guardian of the juvenile. *Id.* at 331. Another court has explicitly held that once a custodial relationship begins in the context of an arresting officer and arrestee, the duty to act affirmatively to protect the person from harm "continues for the duration of that relationship, i.e., until the arrestee-prisoner is released from custody." *Clemets v. Heston,* 20 Ohio App.3d 132, 485 N.E.2d 287 (1985).

In light of these cases, and in light of the fact that the contrary case pointed to by the Plaintiff precedes, and is not consistent with, the *Gilmore* rule, the court is not persuaded that it erred in granting summary judgment to the United States. The court notes that in determining that the *Gilmore* exceptions do not apply to the United States, the court has examined only the arguments and evidence that are before it as to the United States based on Defendant Wise's actions. The court has not addressed any application of this rule to other defendants in this case. Specifically, the court has not considered the question of whether the custodial relationship requirement may be met if a person is able to free himself from custody through some fault or negligence of a defendant. This and other related issues will be considered by the court only if raised by appropriate motion for summary judgment or at trial.

Defendant Wise has moved for reconsideration of the claims against him, arguing that this court's applications of *Gilmore* to the claims against the United States also bars claims against Defendant Wise.[1] In

---

1. The Defendants have also argued, in response to this court's Order to show cause why the Motion to Amend should not be granted, that the Plaintiff's Motion to Amend

the Complaint is due to be denied, given this court's disposition of the claims against the United States. Because the Plaintiff has not

response, the Plaintiff has stated that the Plaintiff would "agree that the two orders appear to be legally inconsistent ..." Plaintiff's Brief in Response to the Motion for Reconsideration page 2. Since the Plaintiff also contends that the court's disposition of the Motion for Summary Judgment by the United States on the state law claims is inconsistent with denying the Motion for Summary Judgment on the federal law claims, the court relies on this position by the Plaintiff and finds that summary judgment is also due to be granted as to Defendant Wise.

## IV. *CONCLUSION*

For the reasons discussed, the court concludes that the Plaintiff's Motion to Reconsider is due to be DENIED and that Defendant Michael Wise's Motion to Reconsider is due to be GRANTED. A separate Order will be entered in accordance with this Memorandum Opinion.

had an opportunity to respond to this argument, the court will, by separate Order, request a response from the Plaintiff as to the propriety of the Plaintiff's Motion to Amend the Complaint.