Barbara RICHARDS, next friend and mother of Kevin Richards, deceased, Plaintiff,

v.

SOUTHEAST ALABAMA YOUTH SERVICES DIVERSION CENTER; Willard Mitchell Yoemans,[1] individually; Dale County Alabama, Ruth Murphy, individually and in her official capacity; Sharon A. Myers, individually and in her official capacity; County Commission of Dale County, Alabama; City of Daleville, Alabama; Jimmy Seaton, individually and in his official capacity; and Tim Hicks, individually and in his official capacity, Defendants.

No. Civ.A. 99–A–283–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 21, 2000.

1. It appears from the Motions for Summary Judgment that two Defendants' names were misspelled in the caption of the Complaint, and that the correct spellings of these Defendants' names are Willard Mitchell Yeomans and Sharon Miers. Accordingly, the court will use the correct spellings of these Defendants' names in this Memorandum Opinion.

Kenneth W. Hooks, Keith T. Belt, Jr., Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, AL, for plaintiff.

John W. Jolly, Jr., Jolly, Peterson & Waters, PA, Tallahassee, FL, for Gerald Love, Willard Mitchell Yoemans, defendants.

Henry B. Steagall, III, Ozark, AL, for Dale County, Alabama, Ruth Murphy, Sharon Myers, County Commission of Dale County, defendants.

Alex L. Holtsford, Jr., Steven A. Higgins, Rick A. Howard, Nix, Holtsford, Gilliland, Lyons & Higgins, PC, Montgomery, AL, for City of Daleville, Alabama, Jimmy Seaton, Tim Hicks, defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on Motions for Summary Judgment filed by De-

fendants City of Daleville, Jimmy Seaton, and Tim Hicks on April 19, 2000 (Doc. # 72), Defendants Willard Mitchell Yeomans and Southeast Alabama Services on May 1, 2000 (Doc. # 77), Defendants Dale County, Ruth Murphy, Sharon Miers, and the County Commission of Dale County on May 8, 2000 (Doc. # 83), and on a Request for Oral Argument filed by the Plaintiff on May 11, 2000 (Doc. # 89).

The Plaintiff originally filed her Complaint in this case on March 22, 1999. Since the filing of her Complaint, the Plaintiff has voluntarily dismissed various Defendants. The remaining Defendants have each moved for summary judgment on the Plaintiff's claim for violation of her son's Fourteenth Amendment rights and the Plaintiff's claims based on Alabama state law.

After the court had received all of the parties' submissions on the Motions for Summary Judgment, the Alabama Supreme Court decided *Ex parte Cranman,* 2000 WL 772850, No. 1971903 (Ala. June 16, 2000), a case restating and applying the law of state-agent immunity in Alabama. This court, therefore, gave the parties additional time in which to brief the effect, if any, that *Ex parte Cranman* had on the issues raised in the Motions for Summary Judgment.

In ruling on each of the Motions for Summary Judgment, the court will consider all of the submissions of all of the parties.[2]

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

---

**2.** The court finds that the issues presented have been discussed adequately by the parties in their briefs and that oral argument would not be helpful to a determination of the issues. Accordingly, the Motion for Oral Argument is due to be DENIED.

## III. *FACTS*

The facts as are presented in the submissions of the parties, viewed in a light most favorable to the non-movant, are as follows:

The Plaintiff, Barbara Richards, was in the United States Army and, during the time in question, lived at Fort Rucker. The Plaintiff had one child, Kevin Richards.

Kevin Richards was arrested for breaking into a pawn shop in Daleville, Alabama. The Plaintiff has testified in her deposition that her son confessed to the police who the other persons were who were involved in the break-in. The Plaintiff has stated in her deposition that after his arrest Kevin Richards had begun to fear for his life because he had confessed to the police, and that he had threatened to take his own life. The Plaintiff estimates that in the week before Kevin Richards' death, she spoke with Defendant Tim Hicks ("Hicks"), a City of Daleville police officer, several times and states that during these conversations she told him about her son's threats of suicide. She testifies in her deposition that Kevin Richards was talking about putting a bullet in his head, or somebody else putting a bullet in his head, and that she told Hicks that Kevin Richards was suicidal and that he was saying "these things." Plaintiff's Deposition, pages 103–04. She also testifies in her deposition that Hicks told her that the Southeast Alabama Youth Services, Inc. (hereinafter "the Diversion Center") was set up to deal with kids who were suicidal. *Id.* at page 114. According to the Plaintiff, she asked that her son, Kevin Richards, be taken to the Diversion Center because she feared for his life.

The Plaintiff also talked with Chief Juvenile Probation Officer Ruth Murphy ("Murphy") and with Juvenile Probation Officer Sharon Miers ("Miers"), both of whom are Defendants in this case. The Plaintiff testifies in her deposition that she told Murphy and Miers on the day before the order was issued to pick-up Kevin Richards that Kevin Richards had been threatening to put a bullet in his head. *Id.* at page 148.

Because Barbara Richards lived on the Fort Rucker military base, Hicks had a military police officer accompany him to take Kevin Richards into custody. Hicks and the military police officer conducted a pat-down frisk of Kevin Richards which failed to reveal the presence of a gun which was located in the front of Kevin Richards' pants. Hicks has stated in his deposition that Kevin Richards' safety and security were his responsibility during the execution of the pick-up order. Hicks Deposition, page 216. Hicks also states in his deposition that his search of Kevin Richards on the day in question did not conform to the written policies of the Daleville Police Department which state that a thorough search of a prisoner's clothing and body are to be conducted before placing a prisoner in a police car. *See* Plaintiff's Exhibit 11. Hicks contends that the Daleville Police Department procedures did not apply during this pick-up.

The Plaintiff has testified that during the time in which Kevin Richards was being transported by Hicks and the military police officer, she called and spoke to Hicks in the car. The Plaintiff states that during this conversation, Hicks made a joke that Kevin Richards may have had a gun in his pocket that he did not want the officers to see. Plaintiff's Deposition, pages 132. The Plaintiff states in her deposition that in response to Hicks' comment, she reminded him that Kevin Richards was suicidal and told him to take Kevin Richards' belt and shoelaces. *Id.* at pages 132–33. The Plaintiff states that Hicks responded by saying that there would be no problem. *Id.* at 133.

Hicks and the military police officer turned Kevin Richards over to Murphy and Miers. Neither Murphy nor Miers searched Kevin Richards before he was placed in their car. Hicks did not inform Murphy or Miers about the Plaintiff's fears that Kevin Richards was suicidal.

Kevin Richards was taken to the Diversion Center. Kevin Richards was left alone in the intake room at the Diversion Center. Before the necessary papers were signed transferring custody of Kevin Richards to the Diversion Center, he produced a gun from the front of his pants, fled the Diversion Center, walked into a wooded area, and fatally shot himself.

## IV. *DISCUSSION*

The court will separately address the grounds for summary judgment asserted in each of the Defendants' Motions for Summary Judgment.

A. *Motion for Summary Judgment of Willard Mitchell Yeomans and Southeast Alabama Youth Services, Inc.*

In her response to the joint Motion for Summary Judgment filed by Willard Mitchell Yeomans and Southeast Alabama Youth Services, Inc., the Plaintiff concedes that Mitchell Yeomans and the Southeast Alabama Youth Services, Inc. are entitled to summary dismissals of all federal and state law claims against them. *See* Plaintiff's Response to the Joint Motion for Summary Judgment filed by Willard Mitchell Yeomans and Southeast Alabama Youth Services, Inc., page 1. Accordingly, summary judgment will be granted as to those Defendants.

B. *Motion for Summary Judgment of City of Daleville, Jimmy Seaton, and Tim Hicks*

The City of Daleville, Jimmy Seaton ("Seaton"), and Hicks (collectively "the City Defendants") have asserted several grounds for their motion to summary judgment, each of which the court will discuss in turn.

■ The first ground asserted as a basis for summary judgment is Eleventh Amendment immunity. The Eleventh Amendment to the United States Constitution insulates a state from private parties seeking to impose liability which must be paid from the public funds in the state

treasury. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). For this immunity to apply, therefore, the individual or entity raising the defense must be considered an agent or instrumentality of the state under state law. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Eleventh Circuit has developed a three-part test for making such a determination: (1) how state law defines the entity, (2) what degree of control the state maintains over the entity, and (3) the entity's fiscal autonomy—where funds for the entity are derived and who is responsible for a judgment entered against the entity. *See Stewart v. Baldwin County Board of Educ.*, 908 F.2d 1499 (11th Cir.1990).

■ The City Defendants argue that they are immune from suit under the Eleventh Amendment because, even though the Eleventh Amendment does not typically apply to political subdivisions such as municipalities, it should apply to them in this case because they were acting as an agent of the state. They point to the decision of the Alabama Supreme Court in *Town of Loxley v. Coleman*, 720 So.2d 907 (Ala. 1998) in support of this argument.

In *Town of Loxley*, the court held that an employee of the town was entitled to Eleventh Amendment immunity because the employee of the town was acting as an agent of the state. In that case, the employee of the town was transporting a state prisoner on a work release program in the town. *Town of Loxley*, 720 So.2d at 908. The City Defendants argue that *Town of Loxley* is controlling in this case because Hicks was acting pursuant to a pick-up order issued by a state court judge, and because Kevin Richards was being transported to a state facility.

The Plaintiff responds only to part of the City Defendants' argument. The Plaintiff argues that this case is distinguishable from *Town of Loxley* because Kevin Richards was not being transported to a state facility, but was instead being

transported to the Diversion Center, which is privately-owned and is only licensed by the state. In their Reply Brief, the City Defendants do not contest the evidence that the Diversion Center is a privately-owned entity, but rely on their argument, which was not responded to by the Plaintiff, that Hicks was acting pursuant to an order from a state court judge.

In *Town of Loxley,* the court reasoned that had the Department of Corrections been transporting the prisoner, there would have been no question that the doctrine of sovereign immunity would apply. *Id.* at 908. In so stating, the court relied on a decision in which the court reasoned that a company administering a program for the Department of Transportation was entitled to sovereign immunity because had the Department administered the program itself, it would have been entitled to immunity. *See Alexsis, Inc. v. Terry,* 675 So.2d 1321 (Ala.Civ.App.1996).

If sovereign immunity applied under the facts in this case, it would apply anytime a municipal officer executed a warrant issued by a state court judge. The court does not find such an extension of sovereign immunity to be warranted by the Alabama precedent cited by the City Defendants. In addition, since it is the conduct of the city officer during the execution of the pick-up order which is at issue, rather than the issuance of the order itself, the court finds no basis for concluding that any damages which would be awarded would come from the state treasury. The Eleventh Circuit has recently stated that the dispositive issue for Eleventh Amendment purposes was whether a judgment would implicate the state treasury under the facts before it. *See Shands Teaching Hospital and Clinics, Inc. v. Beech Street Corp.,* 208 F.3d 1308 (11th Cir.2000). Accordingly, the court finds no reason in this case to depart from the traditional rule that municipalities are not entitled to Eleventh Amendment immunity.

The City Defendants next argue that the individual City Defendants are entitled to qualified immunity as to the federal law claims. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991). An official is entitled to qualified immunity if he is performing discretionary functions and his actions do " 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1424 (11th Cir.1997). When qualified immunity is asserted as a defense, a court must first determine whether there is a violation of a constitutional right, then determine whether that right was clearly established. *See Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

▮▮▮▮ In a case in which an official is alleged to have failed to prevent a suicide of a detainee, a plaintiff must show that the official displayed deliberate indifference to the detainee's taking of his own life. *Tittle v. Jefferson County Com'n,* 10 F.3d 1535 (11th Cir.1994). In determining whether an official was deliberately indifferent to a strong likelihood that a detainee will take his own life, the minimum standard allowed by the due process clause for detainees is the same as that allowed by the eighth amendment for convicted persons. *Belcher v. City of Foley,* 30 F.3d 1390, 1396 (11th Cir.1994). The United States Supreme Court has explained that "deliberate indifference" requires that an individual "know [ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Thus, "deliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835, 114 S.Ct. 1970. Applying this standard, the Eleventh Circuit has stated that deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than mere negligence. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999).

The City Defendants state that although there is no objective evidence that the Plaintiff informed anyone that her son was suicidal, accepting the facts of the Plaintiff as true, they will concede for purposes of the motion only that Hicks was subjectively aware that Kevin Richards was a suicide risk. The City Defendants argue, however, that there is no evidence that Hicks disregarded a risk that Kevin Richards was suicidal. The City Defendants state that it is undisputed that Hicks and the military police official searched Kevin Richards. The City Defendants further argue that Hicks had no prior notice that Kevin Richards would attempt suicide by gunshot. The City Defendants further argue that if Hicks had any indication that Kevin Richards was suicidal and had access to a weapon, he would not have allowed him to travel in the same car without handcuffs. The City Defendants present evidence that Kevin Richards was not old enough to purchase a gun, there had been no report of a stolen gun, and that Hicks did not have information suggesting that Kevin Richards possessed a weapon. The City Defendants state that the most the Plaintiff can establish is that Hicks made a mistake which placed his own life in danger.

The City Defendants rely on *Colburn v. Upper Darby Township,* 946 F.2d 1017 (3rd Cir.1991). In *Colburn,* the custodial officer conducted several pat-down searches but did not conduct a body cavity search. The prisoner had concealed a gun and killed herself in her jail cell. The City Defendants cite this court to a footnote in the opinion in which the court stated that "Even if a trier of fact might rationally infer from this record negligence on the part of Miller in the manner in which she conducted her pat-down search, we conclude that an inference of deliberate indifference to [the prisoner's] welfare could not properly be drawn." *Id.* at 1025 n. 2. The City Defendants argue that in this case it is undisputed that Hicks searched Kevin Richards and that while he may have failed to uncover the gun, his actions do not rise to the level of deliberate indifference.

The Plaintiff responds that *Colburn* is distinguishable on its facts because the court concluded that there was insufficient evidence to show that the defendant should have known of the prisoner's vulnerability to suicide. *Id.* at 1026. The Plaintiff argues that the issue in the case was not whether a frisk search was appropriate, but whether a strip search was required. While that is certainly the holding of the case, that does not refute the City Defendants' argument that the statement in the footnote in *Colburn,* while dicta, is some support for the idea that a negligently conducted pat-down search which does not reveal a weapon concealed in a body cavity, without more, does not constitute deliberate indifference.

In this case, however, there is evidence beyond the evidence that Hicks conducted a search which failed to reveal a gun located in Kevin Richards' pants. Accepting the Plaintiff's evidence as true, Hicks knew that Kevin Richards was suicidal, Hicks made a joking comment to Kevin Richards' mother that Kevin Richards might be hiding a gun in his pocket and then took no further action when she pleaded with him to take precautions against Kevin Richards' possible suicide, and Hicks turned custody over to two probation officers without informing them of Kevin Richards' mothers' report of Kevin Richards' threats to commit suicide. There is also evidence that not only did Hicks know that the Plaintiff feared that Kevin Richards would take his own life, but that Hicks had also been informed by the Plaintiff that Kevin Richards had been talking about putting a bullet in his head. Plaintiff's Deposition, pages 103–04.

The Plaintiff has provided expert testimony in the form of an affidavit from George Armbruster, who has served twenty-two years in law enforcement in various capacities, in which he states that a police officer must inform all of those in the chain of custody of a detainee about the potential

suicidal proclivities of a prisoner and that failure to do so is reckless and wanton. *See* Affidavit of George Armbruster at ¶ (c). Armbruster also states that when an officer believes that a suspect is suicidal, he should do a particularly thorough search and frisk procedure. *Id.* at ¶ (b).

Taking the Plaintiffs' version of the facts as true, and considering the Plaintiff's expert testimony, at this point in the proceedings, the court concludes that there is sufficient evidence to establish that Hicks' actions rose above the level of mere negligence and constituted deliberate indifference.

The City Defendants have also argued that there is no constitutional violation because there is no causation between Hicks' actions or failure to act and Kevin Richards' resulting suicide. In so arguing, the City Defendants cite to *Gilmore v. Shell Oil Co.,* 613 So.2d 1272 (Ala.1993). In *Gilmore,* the Alabama Supreme Court adopted a rule from another jurisdiction that suicide is a deliberate intervening act exonerating the defendant from legal responsibility. *Id.* at 1276. One exception to this rule "allows for the imposition of a duty to prevent suicide but only in a custodial situation where suicide is foreseeable, [typically in the case of] hospitals or prisons." *Id.* The City Defendants argue that this exception does not apply because Kevin Richards was not in the custody or control of Hicks at the time of his death.

There are a few reported federal decisions, some of which are relied upon by the City Defendants, which discuss the causation requirement in the context of cases in which the decedent committed suicide, although most of those cases involve application of state law in the context of a state law negligence claim or a federal tort claims act claim. One case cited by the City Defendants reasons that there could be no liability for a suicide because the evidence showed that the defendants "did not have custody or control of the decedent at the time of his death." *Francis v. Pike County, Ohio,* 708 F.Supp. 170, 171 (S.D.Ohio 1988), *aff'd without op.,* 875 F.2d 863, 1989 WL 49654 (6th Cir.1989). In holding that there was no liability under § 1983, however, the court also stated that there was "also no evidence that any act or omission on their part was linked to the decedent's death." *Id.* at 172.

It is the latter finding in *Francis* which is the point at which this case departs from precedent discussing the absence of custody or control in a case in which suicide is said to break the causal connection, because there is evidence in this case which is sufficient to raise a question of fact as to whether the act or omission on the part of Hicks was linked to Kevin Richards' death. The evidence in this case is that Hicks had been warned that Kevin Richards was suicidal, that he did not do a thorough search when Kevin Richards was detained despite his actual knowledge of reports that Kevin was suicidal, that he joked with the Plaintiff about the presence of a gun, that he turned Kevin Richards over to the probation officers without warning them that the Plaintiff feared that Kevin Richards was suicidal, and that the probation officers did not search Kevin Richards because they assumed that Hicks had searched him. Under the facts as presently developed, a question of fact has been raised as to whether Hicks' actions were the proximate cause of Kevin Richards' death.

As the City Defendants have pointed out, this court has previously interpreted Alabama law to require an element of a custodial relationship as well as foreseeability of the suicide before abrogating the general rule that suicide is an intervening cause which breaks the causal connection. The City Defendants have argued that since summary judgment was granted to the military police officer who accompanied Hicks in picking up Kevin Richards, summary judgment must also be granted Hicks. First, the court notes that in ruling on the federal claims brought against the military police officer, the Plaintiff attempted to distinguish, but never argued that Alabama case law regarding suicide as an intervening cause was not dispositive as to the federal claims brought. There-

fore, although the court stated, in ruling on the United States Defendants' Motions initially, that in the absence of any authority to the contrary, it found sufficient evidence of proximate cause, *see* August 4, 1999 Memorandum Opinion, page 11, the court granted summary judgment upon reconsideration, based on the Plaintiff's apparent agreement that the legal standards for causation under Alabama and federal law were the same. *See* September 30, 1999 Memorandum Opinion, page 6.

Although the Plaintiff apparently still contends that the Alabama rule governing causation is controlling, the Plaintiff argues that the Alabama rule does not require actual custody at the time of the decedent's death. While the court has not found Alabama case law to support such a proposition decided after *Gilmore*, the *Francis* decision certainly applies such a rule in the context of a § 1983 claim.

In the context of the claim against Hicks, and the claims against Seaton and the City of Daleville arising from the policies governing Hicks' actions, the court finds that the exception under Alabama law would include the rule applied in *Francis*, so that the custodial relationship between Hicks and Kevin Richards would meet the Alabama rule. The facts presented in this case are unique. This is not a case in which a custodial relationship existed and then the person was released from custody and committed suicide. Instead, this case presents a situation in which custody continued through several steps, the subsequent step in the chain of custody apparently relying on the step before it to ensure the safety of the detainee. Accepting the Plaintiff's evidence as true, Hicks, the initial step in this chain of custody, failed to do a thorough search despite his knowledge of Kevin Richards' suicidal proclivities, and failed to inform the subsequent custodians of Kevin Richards of these proclivities. The logic behind an actual custody or control rule is not compelling with regard to Hicks because there is evidence that Hicks' actions caused the resulting custodial relationships to fail in protecting Kevin Richards from committing suicide. In other words, under the facts as presented, Hicks' actions did not merely fail to prevent Kevin Richards' suicide because he did not adequately search him while he was in Hicks' custody, but the failure to thoroughly search ultimately led to Kevin Richards' death because the next step in the chain of custody relied on Hicks' search and Hicks' failure to inform the next step in the chain of custody that the Plaintiff believed Kevin Richards to be suicidal. Accordingly, the court concludes that, to the extent that the Alabama rule governs the determination of causation in a claim based on the violation of constitutional rights, it does not preclude the deliberate indifference claim against Hicks under the facts before the court at this stage in the case.[3]

---

**3.** It is regrettable that the way in which the evidence and arguments in this case have developed has lead to facially inconsistent findings by the court as to Hicks and the military police officer involved. The court would still find that summary judgment is due to be granted to the military police officer, however, because a meaningful distinction can be drawn between Hicks and the military police officer. As evidenced by the Amended Complaint filed by the Plaintiff, the Plaintiff concedes that, from the perspective of the United States of America, the military police officer bore no responsibility, under military regulations, to search Kevin Richards. Kevin Richards was not being detained by the United States. The military police officer's situation is analogous to the facts presented in *Vinson v. Clarke County, Alabama,* 10 F.Supp.2d 1282 (S.D.Ala.1998), therefore, in which Clark County, although it provided jail facilities, was not the custodian of the detainee. In addition, the evidence which was before the court in ruling on the military police officer's motion was that a call from the Plaintiff was "patched through" to Hicks. It was on this slight evidence that the court concluded an inference could be drawn that the military police officer overheard that the Plaintiff feared that Kevin Richards was suicidal. The court cannot conclude, however, that this slight evidence is sufficient to establish a duty on the part of the military police officer to convey information regarding the detainee once they left the military base and the Daleville police officer turned the detainee over to the county probation officers.

■ The presence of a constitutional violation does not end this court's inquiry, however, because the City Defendants have moved for summary judgment on the issue of qualified immunity. "For qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1150 (11th Cir.1994).

The Plaintiff has argued that there are cases which have established that detainees have a constitutional right to be protected from suicide. While that general proposition may be true, the cases cited by the Plaintiff in support of that proposition do not arise under factual circumstances which are analogous to this case. Furthermore, "although general principles of law can provide fair warning, they do not necessarily provide such warning unless the constitutional rule at issue may be applied 'with obvious clarity.'" *Jenkins v. Talladega City Board of Education*, 115 F.3d 821, 825 n. 3 (11th Cir.1997). The classic example of an obviously clear rule is an allegation that welfare officials are selling children into slavery. *Id.*

In this case, Hicks failed to thoroughly search Kevin Richards despite the Plaintiff's warnings, and despite the fact that the Plaintiff requested that Kevin Richards be taken to the Diversion Center in order to protect him from suicide, and Hicks also did not inform the next person in the chain of Kevin Richards' custody of his threats of suicide. While the allegations of Hicks' conduct, if true, have been identified as being reckless and wanton by the Plaintiff's expert, they have not been clearly identified as being violative of constitutional rights in any applicable case law. In addition, the court cannot conclude that these circumstances are sufficiently like the example of selling children into slavery to present the type of situation in which the constitutional rule can be applied with "obvious clarity." *Jenkins*,

115 F.3d at 825 n. 3. Hicks is, therefore, entitled to qualified immunity.

The City Defendants have also moved for summary judgment on the federal law claims against Defendant Jimmy Seaton. Jimmy Seaton is the Chief of Police of the City of Daleville and was Hicks' supervisor at the time of Kevin Richards' death. The Plaintiff appears to seek to hold Jimmy Seaton liable for a claim under § 1983 based on a theory of inadequate training and/or supervision.

The City Defendants point out that to be held liable for inadequate training and supervision under § 1983, there is a three part test which must be satisfied: (1) the supervisor was deliberately indifferent to a plaintiff's needs, (2) a reasonable person in the supervisor's position would have known that his failure to train constituted deliberate indifference, and (3) the supervisor's conduct must be causally related to the constitutional infringement by his subordinate. *Greason v. Kemp*, 891 F.2d 829, 837 (11th Cir.1990).

With regard to Seaton, the Defendants raise two particular grounds in support of the Motion for Summary Judgment. They argue first that Seaton cannot be held liable because the Plaintiff's son was not deprived of any right secured by the constitution. This ground is unavailing, however, as the court has found that, at this stage in the proceedings, there is sufficient evidence from which to conclude there was deliberate indifference to Kevin Richards' constitutional rights.

The second ground is that there is no causal connection between Seaton's alleged failure to train and the alleged constitutional infringement by Hicks. The City Defendants attempt to support this ground for summary judgment by arguing that because Kevin Richards was not in the custody or control of anyone representing the City of Daleville at the time of his death, the causal connection was broken. As stated above, however, the court has declined to adopt this analysis of the cau-

sation requirement with regard to the constitutional claim.

Although the City Defendants have not discussed at any length the application of the qualified immunity defense to the claims against Seaton, they do clearly invoke this defense on Seaton's behalf. The Plaintiff has apparently argued that it was clearly established under the applicable law that Seaton's actions were deliberately indifferent to Kevin Richards' constitutional rights. The Plaintiff has not, however, pointed to any cases with substantially similar facts, and the court has not found any upon independent research. As stated above, the court also cannot conclude that this case presents the type of situation in which the constitutional rule would apply with obvious clarity. *Jenkins*, 115 F.3d at 825 n. 3. Accordingly, Seaton is entitled to qualified immunity.

■ The City Defendants also move for summary judgment on the federal claims brought against the City of Daleville. A local government cannot be held liable under a respondeat superior theory for constitutional torts committed by municipal employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff must instead establish that the municipality had a policy or custom which resulted in the constitutional deprivation at issue. *Id.* at 694, 98 S.Ct. 2018. The policy or custom must be the "moving force" of the constitutional violation. *Id.*

■ In this case, the Plaintiff has pointed to two specific policies of the City of Daleville: one, that the City of Daleville had a policy of allowing officers to make arrests and place detainees in the police cars without doing a search and frisk of the detainees, and two, that the City of Daleville does not have a written policy regarding the handling of potentially suicidal prisoners.

The Plaintiff provides expert testimony to establish that all arrestees/detainees are to be thoroughly frisked and searched before being placed in a police vehicle. *See* Affidavit of George Armbruster. The Plaintiff points out that the City of Daleville has such a written policy. The Plaintiff also points to evidence, however, that the Daleville Police Department had a policy and custom of allowing their police officers to routinely make arrests and place detainees in police cars without having done a frisk and search of the detainees. The Plaintiff has cited to testimony in the deposition of Jimmy Seaton in which he agrees with the statement that he allowed his police officers to make their own decision as to whether they would frisk or search someone they were detaining or picking up on a pick-up order. Jimmy Seaton Deposition, page 131. The Plaintiff has also provided evidence from the Mayor of Daleville, who was formerly the police chief, that the search policy was not always followed and that he himself arrested people without searching them. Etheredge Deposition, page 25. Hicks testified that the Daleville Police Department left it to the officer's discretion as to whether the officer did a pat-down search. Hicks Deposition, page 62. Significantly, Hicks also stated that the Daleville Police Department left it to the officer's discretion how a pat-down search was to be done. *Id.* Etheredge stated that perhaps the written policy of performing a search before placing a person in the police car should be followed in the future. Etheredge Deposition, pages 40–41.

The Plaintiff also provides the opinion of George Armbruster that the failure to do a thorough frisk and search of an arrestee can result in loss of life of the transporting officer, the arrestee or detainee, and other persons who may come in contact with the arrestee/detainee. George Armbruster Affidavit at ¶ (a). Armbruster also offers the opinion that the failure to enforce the written search policy is a deliberate indifference to detainees who have suicidal proclivities. *Id.* at ¶ (d).

In moving for summary judgment, the City Defendants have relied on the argument that there is a break in the causal connection between any alleged depriva-

tion of Kevin Richards' constitutional rights and Kevin Richards' death because of Kevin Richards' suicide. As the court has stated above, however, there is sufficient evidence at this point in the proceedings to demonstrate that Hicks' conduct, which the Plaintiff claims resulted from a city policy, was an "act or omission" which was "linked to the decedent's death." *Francis v. Pike County, Ohio*, 708 F.Supp. 170, 172 (S.D.Ohio 1988), *aff'd without op.*, 875 F.2d 863, 1989 WL 49654 (6th Cir. 1989).

The City Defendants also argue that no policy of the City was the "moving force" behind any alleged constitutional deprivation because the City of Daleville's policies did not apply. According to the City Defendants, because Kevin Richards was located on a military base, Hicks had to be accompanied by a military police officer in order to pick up Kevin Richards from the military base, Kevin Richards was transported in the military vehicle, and the military police officer was in charge of the pick-up. In support of these statements, the City Defendants have provided evidence in the form of deposition testimony from Hicks and Seaton. Hicks testified that he had never gone to pick up anybody at Fort Rucker before, but it was his understanding that he was to follow the rules of the military when there is a pickup at Ft. Rucker. Hicks Deposition, page 156. Hicks also, however, agreed with the proposition that the military police officer assisted and participated in the detention of Kevin Richards. *Id.* at 157. The Plaintiff, on the other hand, has pointed to documentary evidence to establish that the military considers its role to be the passive one when a civilian police officer is the arresting officer.

The City Defendants also point to Seaton's deposition in which he explains that generally when there is a pick-up at Fort Rucker, the City of Daleville calls the military police who then contact the person and tell the person to report to the police station, or the military police detain the person and take the person to the military police station, and the city officers pick the person up. Seaton Deposition, page 60. Seaton states that the City of Daleville's frisk and search procedures did not apply to Hicks the day that he picked up Kevin Richards. *Id.* at 74. Seaton then states, however, that if the City of Daleville officer picked the detainee up at the military police station, then the written search and frisk procedures would apply. *Id.* at 78. Seaton also indicated that the circumstances under which Kevin Richards was transported are the only circumstances he can think of in which no City of Daleville police procedures applied. *Id.*

Although the Plaintiff has specifically pointed to two policies, there is evidence which indicates that there are a number of policies which can be at issue here, any one of which, or more than one of which, may ultimately be proven to be a cause of Kevin Richards' death. Either the failure to properly instruct police officers in how to detain persons and how to conduct thorough searches of those detainees, or a policy of failing to instruct officers in how to detain persons with alleged suicidal tendencies, or a policy of failing to instruct officers in how to detain persons at Fort Rucker could all be polices which led to Kevin Richards' death.

While the City Defendants have argued that the Daleville Police Department's written policy regarding searches and frisks was not adopted with deliberate indifference, in this case it is not deliberate indifference in the adoption of the written policy which is relevant, but it is instead the fact that the Daleville police officers, although governed by a written policy requiring a thorough search for detainees, were allowed to decide when and where to implement such a policy, and/or the fact that there was no policy governing how to detain suicidal persons, or apparently, how to detain a person who was on a military base.

Although the standard for establishing deliberate indifference is rigorous, municipal liability may be based on a claim of failure to train "where a municipality's fail-

ure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Sewell v. Town of Lake Hamilton,* 117 F.3d 488, 489–90 (11th Cir.1997) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998). The deliberate indifference standard is met under these circumstances where a policy or training program is, on its face, clearly inadequate and likely to give rise to constitutional violations. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Based on the evidence recited above, there are fact issues which would support a finding of deliberate indifference and that a policy of the City of Daleville was a moving force in the violation of Kevin Richards' rights. One question raised by the evidence at this point in the case is that if Hicks actually thought that his actions were not governed by any city procedures and the military police officer was in charge, why did Hicks agree with the statement the military police officer "assisted" in the search? It is apparently clear that, from the perspective of the written policies of the United States, it is the military police officer who is a passive by-stander in an arrest by a City of Daleville police officer at Fort Rucker. Another question raised by the evidence is that if the customary procedure of the City of Daleville is to apply the search and seizure policy when obtaining a detainee from Fort Rucker did Hicks wrongly assume, or was he taught, that the procedure did not apply if he was accompanied by a military police officer? If Hicks was not in charge of the detention, why did he testify that he was responsible for Kevin Richards' safety? Why did Hicks engage in any aspect of the search of Kevin Richards at all if he was not in charge of the detention? What standard did Hicks apply if the City of Daleville policy did not govern him? If

there was no training in how to conduct a search or frisk, what standard did Hicks apply in searching Kevin Richards? These are just some of the issues which the court finds the evidence has raised. Because of these fact issues, the court cannot conclude at this stage in the proceedings that the Plaintiff has failed to show that there was a policy of deliberate indifference which was a moving force in the violation of Kevin Richards' constitutional rights. Summary judgment is, therefore, due to be DENIED as to the City of Daleville on the federal law claims.

### 2. State Law Claims

■ The City Defendants have moved for summary judgment on the state law claims against them on the basis of discretionary function immunity. Alabama Code § 6–5–338 provides, in relevant part, as follows:

(a) Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or a municipality thereof ... shall have immunity from tort liability arising out of his or her conduct in the performance of any discretionary function within the line and scope of his or her law enforcement duties.

The Plaintiff disputes that this statutorily-provided immunity applies in this case. The Plaintiff contends that Hicks was not engaged in discretionary functions. In arguing that Hicks' actions were not discretionary functions, the Plaintiff points to a decision of the Alabama Supreme Court in which discretionary function immunity was denied to an inspector who was required to check "yes" or "no" on an inspection form. *See Phillips v. Thomas,* 555 So.2d 81 (Ala. 1989). The Plaintiff argues that in the instant case, performing a thorough search for weapons was a ministerial act. The Plaintiff has also argued that under *Town of Loxley v. Coleman,* 720 So.2d 907 (Ala. 1998), this court should conclude that Hicks was engaged in ministerial acts. In *Town of Loxley,* the court concluded that

exercise of the defendant's function required due care, rather than difficult decision-making, because the defendant was driving in an attempt to avoid potholes. *Id.* at 909. The Plaintiff has argued that Hicks merely failed to exercise due care in failing to ensure that Kevin Richards had been adequately searched for weapons.

In applying statutory discretionary function immunity, the court will look to definitions of discretionary acts which have been applied by the Supreme Court of Alabama. Discretionary acts have been defined as "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Wright v. Wynn,* 682 So.2d 1, 2 (Ala.1996). In addition, the Supreme Court of Alabama has recently re-stated the law governing state agent discretionary function immunity and has concluded that a state agent is immune from civil liability when exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons. *See Ex parte Cranman,* 2000 WL 772850, N. 1971903 (Ala. June 16, 2000).

In this case, Hicks' actions in deciding how to conduct the search of Kevin Richards, given that he allegedly knew that Kevin Richards was suicidal, and his decision not to relay the alleged suicide threats to the probation officers went beyond checking "yes" or "no" on a form, or driving to avoid potholes, and instead required "personal deliberation, decision and judgment." *White v. Birchfield,* 582 So.2d 1085, 1087 (Ala.1991). In addition, Hicks' actions fall within the Supreme Court of Alabama's restatement of discretionary acts for state agent discretionary function immunity. *See Ex parte Cranman,* 2000 WL 772850 at *12. Accordingly, the court finds that the Plaintiff's argument against application of statutory discretionary function immunity to Hicks is unavailing and that Hicks is entitled to summary judgment on the state law claims.

The City Defendants have also contended that Seaton is entitled to discretionary function immunity as to any state law claims. The Plaintiff does not appear to have responded to this argument. The thrust of the Plaintiffs' claim against Seaton appears to be Seaton's failure to adequately train Daleville police officers. This alleged action, or lack of action, on Seaton's part would be as a result of a discretionary function. *See e.g., Ross v. Alabama,* 15 F.Supp.2d 1173 (M.D.Ala. 1998) (determining the appropriate training, supervision, and discipline for social workers was within the scope of authority of the county director and entitled the director to immunity on state law tort claims); *Williams v. Goldsmith,* 905 F.Supp. 996 (M.D.Ala.1995) (exercise of authority to train deputies is a discretionary function). Accordingly, Seaton is entitled to discretionary function immunity.

The statutory provision which governs discretionary function immunity for peace officers has been extended in Alabama to the municipality which employs the peace officer. Although the City Defendants only belatedly argue this point in their Reply, this court has previously concluded that it is bound by a determination by the Alabama Court of Civil Appeals that "the plain language of Ala.Code 1975 § 6–5–338(b), clearly extends discretionary-function immunity to the City of Montgomery, [the individual police officers'] employer." *Hardy v. Town of Hayneville,* 50 F.Supp.2d 1176 (M.D.Ala.1999) (quoting *Montgomery v. City of Montgomery,* 732 So.2d 305, 312 (Ala.Civ.App.1999)). Accordingly, the City is also protected by discretionary function immunity and summary judgment is due to be GRANTED to all of the City Defendants on the state law claims.

C. *Motion for Summary Judgment of Dale County, Alabama, the County Commission of Dale County, Alabama, Ruth Murphy, and Sharon Miers*

In moving for summary judgment, Dale County, Alabama; the County Commission

of Dale County, Alabama; Ruth Murphy; and Sharon Miers ("the Dale County Defendants") incorporate the arguments made by the City Defendants. In addition to those arguments they raise additional arguments in support of their motion for summary judgment.

### 1. Federal Claims

The Plaintiff has brought claims for violation of Kevin Richards' constitutional rights against Murphy and Miers on a theory similar to her theory with regard to the City Defendants; namely, that Murphy and Miers failed to prevent Kevin Richards from committing suicide and, in so doing, were deliberately indifferent to Kevin Richards' constitutional rights. The Plaintiff argues that Murphy and Miers acted with deliberate indifference to repeated warnings by the Plaintiff, Kevin Richards' mother, that Kevin Richards was suicidal.

The Dale County Defendants have moved for summary judgment as to the claims against Murphy and Miers on the basis of sovereign immunity. Although the Dale County Defendants do not clearly make this argument, it appears that they intend to assert sovereign immunity as a defense against both federal and state law claims.

As stated earlier, the Eleventh Circuit has developed a three-part test for making a determination of whether a defendant should be afforded Eleventh Amendment immunity: (1) how state law defines the entity, (2) what degree of control the state maintains over the entity, (3) the entity's fiscal autonomy—where funds for the entity are derived and who is responsible for a judgment entered against the entity. *See Stewart v. Baldwin County Board of Educ.*, 908 F.2d 1499 (11th Cir.1990).

 The Dale County Defendants argue that because Murphy and Miers served at the pleasure of a State District Court Judge, who is a member of the state judiciary, Murphy and Miers are entitled to sovereign immunity. They point to Alabama Code § 12–15–7(a), for the proposition that the court may appoint probation officers to be certified by the Alabama Department of Youth Services. The Dale County Defendants also point to Rule 3 of the Alabama Rules of Juvenile Procedure and state that it gives the juvenile court authority over juvenile probation officers. The Dale County Defendants further state that although Murphy and Miers were paid by Dale County, their salaries were reimbursed by the State of Alabama.

The Plaintiff responds with testimony from Murphy's deposition that she is paid her salary by the Dale County Commission and that the paycheck comes directly from the County. Murphy Deposition, page 27. Murphy also testified that the Dale County Commission controls the budget within which she operates. *Id.* at page 32. The Dale County Commission makes the budgetary decisions about the youth services department in which she works. *Id.* The County also has provided her with a policies and procedures manual. *Id.* at 33–34. In their supplemental brief on the issue of the applicability of *Ex parte Cranman,* the Dale County Defendants also provide testimony from Murphy that the judge supervises them, not the County. *Id.* at 240.

The Plaintiff points out that this court has previously determined that the Chief Juvenile Probation Officer of Lowndes County is a county, not a state agent. *See A.M. v. Grant,* 889 F.Supp. 1495 (M.D.Ala.), *aff'd without op. on other grounds,* 68 F.3d 486 (11th Cir.1995). In so doing, this court looked at the statute which has been cited by the County Defendants in this case and also noted that the salary of juvenile probation officers is paid by both the county and the state. *Id.* at 1502, 1503.

The court finds that the Dale County Defendants have not adduced sufficient evidence or authority which causes this court to decide contrary to its earlier interpretation of the status of juvenile probation officers under Alabama law. Although there apparently are no Alabama Supreme Court or Court of Civil Appeals cases discussing whether juvenile probation officers

are state or county actors, Rule 4 of the Rules of Juvenile Procedure indicates that juvenile probation officers are to be part of the local civil service authority if one is available. If a civil service authority is not available, then the judge, administrative director of courts, **and** the governing body of the county set the compensation and benefits. *See* Ala.R.Juv.Pro. 4. Because juvenile probation officers are covered as county civil service employees, or the county at least has input into compensation for juvenile probation officers, this rule is an indication that juvenile probation officers are defined as county employees under state law. The court notes that this interpretation of the relevant rule has also been made by the Alabama Attorney General's office in a non-binding opinion letter stating that juvenile probation officers are county employees. *See* 1991 WL 494808 (Ala.A.G. Sept. 4, 1991).

As to the second factor examined when determining whether a defendant is an agent of the state, while there is evidence that the juvenile probation officers serve at the pleasure of the state court judges, there is also evidence, in the form of testimony from Murphy, that the County sets the rules and procedures for the probation officers. There is also evidence that the County pays the juvenile probation officers' salaries, with some subsidy from the state. Finally, and significantly, there is evidence from Murphy that the county controls the budget of the office for which she works. This is at least some evidence that a judgment against the juvenile probation officers would be paid by the county, not the state. Under application of the three factors relevant to the Eleventh Amendment inquiry, therefore, the court concludes that the juvenile probation officers in Dale County are county, not state, probation officers. The court cannot conclude, therefore, that sovereign immunity applies to the claims asserted against the Dale County Defendants.

■ The Dale County Defendants also move for summary judgment as to the merits of the Plaintiff's claim, arguing that the Plaintiff has not established that Murphy and Miers were deliberately indifferent to Kevin Richards' rights. They argue that there is no evidence that Murphy and Miers knew of the possibility that Kevin Richards might have a gun or that he might have attempted to secrete a weapon. They argue that even assuming that the Plaintiff, Kevin Richards' mother, informed Murphy of Kevin Richards' suicidal tendencies, Murphy and Miers assumed and believed that Kevin Richards had been searched at the time that custody was transferred over to them. They state that if they had suspected that there was a hidden weapon, they would have placed Kevin Richards in handcuffs. They further state that Kevin Richards acted normally during the transport.

As stated above, the United States Supreme Court has explained that "deliberate indifference" requires that an individual "know [ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eleventh Circuit has described the three components of this standard as: (1) subjective knowledge of a risk of serious harm, (2) disregard of that risk, (3) by conduct that is more than mere negligence. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999). In a case in which an official is alleged to have failed to have prevented a suicide, "deliberate indifference can ... be established [only] where a plaintiff demonstrates a ' "strong likelihood, rather than a mere possibility,' " that suicide would result from a defendant's actions or inaction," *Tittle,* 10 F.3d at 1540 (quoting *Edwards v. Gilbert,* 867 F.2d 1271, 1276 (11th Cir.1989)).

As to the first component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *McElligott,* 182 F.3d at 1255. In this case, Murphy and Miers deny that they had any knowl-

edge that Kevin Richards was suicidal, but acknowledge that the Plaintiff has testified that she told Murphy of Kevin Richards' suicidal tendencies. In fact, in her deposition, the Plaintiff was asked whether she told Murphy and Miers that Kevin Richards had been talking about putting a bullet in his brain and she responded, "Yes, I did." Plaintiff's Deposition, page 148. The court concludes, therefore, that a question of fact has been raised as to the first component of the deliberate indifference test.

The next two components are that the official must have disregarded that risk and that the manner in which the risk was disregarded must have been more than negligence. The Dale County Defendants argue that Murphy and Miers believed and assumed that Kevin Richards had been searched at the time that custody was transferred to them. Clearly, Murphy and Miers did not act in any way to prevent Kevin Richards from committing suicide. The question before the court, therefore, is whether their failure to act was mere negligence, or was more than negligence.

The Dale County Defendants have cited this court to *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3rd Cir.1991). In *Colburn*, the court concluded that the official's pat-down search or failure to do a body cavity search was not deliberate indifference because, in the absence of evidence that the defendant knew or should have known of the decedent's proclivity to suicide, the failure to conduct a more intrusive search was not deliberate indifference. *Id.* at 1026. There is evidence of knowledge of Kevin Richards' threat to commit suicide in this case, however, and the evidence indicates that Murphy and Miers failed to conduct any type of search at all. Accordingly, the court is not persuaded that *Colburn* has any bearing on the claims against Murphy and Miers and will, therefore, look to the deliberate indifference rules as developed by the Eleventh Circuit.

The Eleventh Circuit has, in the context of an Eighth Amendment deliberate indif-

ference claim, described the circumstances under which the distinction has been made between deliberate indifference and mere negligence. *McElligott*, 182 F.3d at 1255. Deliberate indifference has been found where no medical treatment is given when the need for treatment is known, where needed treatment is delayed, where there is grossly inadequate care, where there is a decision to take a less efficacious course of treatment, and when the need for treatment is so obvious that medical care which is cursory amounts to no treatment at all. *Id.* In this case, the need for suicide precaution was known to the officials, but no steps were taken.

The Plaintiff suggests in her brief that the appropriate steps in this case would have been to conduct a thorough frisk and search, and, if the female officers were uncomfortable conducting such a search, making sure that a thorough search had already been conducted before accepting custody of Kevin Richards. The Plaintiff argues that Murphy and Miers merely argue that they assumed such a search had been conducted and did not even inquire as to whether a search had been made of Kevin Richards. There is also no evidence that Murphy or Miers informed the Diversion Center of the mother's report of Kevin Richards' suicide threats. The court agrees that, taking the Plaintiff's evidence as true, the failure to take any action at all, even if just to inquire as to whether a thorough search had been conducted, in the face of actual knowledge that the mother had reported that the child had threatened to shoot himself, constituted conduct which went beyond mere negligence.

The Dale County Defendants also argue that Kevin Richards was not in the actual custody of Murphy and Miers when he committed suicide and so there is no causation between the alleged negligence or deliberate indifference and the alleged harm. Putting aside the question of applicability of the actual custody requirement which has been discussed in detail above,

**1286**

there is evidence that Kevin Richards was within the actual custody of Murphy and Miers at the time of his suicide. While Murphy and Miers and Kevin Richards were all physically on the premises of the Diversion Center at the time that Kevin Richards escaped from the Diversion Center, the Plaintiff has provided evidence, which Murphy and Miers have not refuted, that the Diversion Center does not take custody and control of a detainee until an intake form has been signed, the charge has been stated, and a frisk search has been performed. Charles Yeomans Deposition, page 30. Yeomans is not aware that any intake form was ever filled out on Kevin Richards. *Id.* at page 25. According to Yeomans, based on the policy and procedure of the Diversion Center, the Diversion Center never took custody and control of Kevin Richards. *Id.* at page 30. Given this evidence, the court cannot conclude that the mere fact that Kevin Richards was inside of the Diversion Center at some point means that he was no longer in the custody of Murphy and Miers.

■ The Dale County Defendants also argue that Murphy and Miers are entitled to the defense of qualified immunity because they were acting within their discretionary authority when they placed Kevin Richards in the car and transported him to the Diversion Center, and they did not violate any clearly established law. The Dale County Defendants argue that Murphy and Miers did not search Kevin Richards because they assumed that he had already been searched and they do not search male juveniles. They state that it would be inappropriate for a female juvenile administrative case worker to search the groin area of a male juvenile.

As stated above, the first prong of qualified immunity analysis is whether the defendant was engaged in a discretionary function. An official may show that an act was within his discretionary authority merely by showing that the acts "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994). This prong of the analysis has not been challenged by any citation of evidence by the Plaintiff. Accordingly, the court finds that this prong has been met. *See id.* (finding that transporting prisoners was part of discretionary duties of United States Marshals).

The Plaintiff has challenged the second prong of qualified immunity analysis with regard to Murphy and Miers. The Plaintiff has argued that the law is clearly-established that a detainee has the right to be protected from self-inflicted injuries. While that broad proposition is true, that general proposition is not the type of rule which has been identified by the Eleventh Circuit as being capable of being applied "with obvious clarity." *Jenkins v. Talladega City Board of Education,* 115 F.3d 821, 825 n. 3 (11th Cir.1997). That general proposition also does not "dictate, that is, truly compel (not just suggest or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1150 (11th Cir.1994). The Plaintiff has not pointed this court to any case establishing that a probation officer acts with deliberate indifference by failing to search a detainee about whom suicidal threats have been reported, if that detainee has been detained and transported to that officer by a police official, and when the probation officer's operating policy is not to conduct a search of that type of detainee herself. The court concludes, therefore, that Murphy and Miers are entitled to qualified immunity on the § 1983 claims.

Finally, the Dale County Defendants argue that there can be no liability on the part of Dale County or the County Commission for federal law violations because there is no respondeat superior liability under 42 U.S.C. § 1983. The Plaintiff concedes this point and agrees that summary judgment is due to be granted to Dale County and the Dale County Commission

on the § 1983 claims. *See* Plaintiffs' Response, page 26. The Plaintiff further concedes that all claims against the County, both federal and state, for failure to train and supervise should be dismissed. Accordingly, summary judgment is due to be GRANTED as to Dale County and the Dale County Commission on all of the Plaintiff's federal law claims, and on all of the Plaintiff's claims for failure to train and supervise.

### 2. State Law Claims

Because the Plaintiff had conceded that summary judgment is due to be granted as to all of the Plaintiff's claims for failure to train and supervise, it appears that the only state law claim which remains against Dale County, Alabama and the Dale County Commission is one based on the alleged negligence of Murphy and Miers. The Plaintiff states that although she concedes that there is no respondeat superior liability under § 1983, the state law claims against the County and the County Commission are not due to be dismissed because the County and the County Commission can be held liable for the acts of their agents.

 The Dale County Defendants raise the defense of discretionary function immunity. They point out that public officials in Alabama are entitled to discretionary function immunity for state law claims which is similar to the qualified immunity defense to federal law claims. The Dale County Defendants argue that because Murphy and Miers were exercising their judgment or discretion in furtherance of their duties as juvenile probation officers, they are entitled to discretionary function immunity.

The Supreme Court of Alabama has recently restated that law governing state-agent discretionary function immunity. *See Ex parte Cranman*, 2000 WL 772850 (Ala. June 16, 2000). In *Ex parte Cranman*, the court held as follows:

A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

(1) formulating plans, policies, or designs; or

(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

 (a) making administrative adjudications;

 (b) allocating resources;

 (c) negotiating contracts;

 (d) hiring, firing, transferring, assigning, or supervising personnel; or

(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing duties and the State agent performs the duties in that manner; or

(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id.* at *11–12.

When asked by this court to comment on the applicability of *Ex parte Cranman* in this case, the Plaintiff responded that *Ex parte Cranman* has no applicability because Murphy and Miers are county, not state actors. Upon review of the precedent of the Supreme Court of Alabama on this question, however, it appears that the Supreme Court of Alabama has extended discretionary function immunity to county officials. In *Roden v. Wright*, 646 So.2d 605, 611 (Ala.1994), a plaintiff brought a state law claim against the chairman of the County Commission of Marshall County, the County Commission of Marshall County, and Marshall County for intentional interference with business relationships. *Id.* at 609. The court determined that the agent was entitled to discretionary func-

tion immunity. *Id.* at 610. The Supreme Court of Alabama did not explain the reason for the extension of discretionary function immunity to county officials in the case. It is clear from the language of the opinion, however, that the court made its findings based in part on the fact that the Eleventh Circuit had previously concluded that the county officials in the case were entitled to qualified immunity from the federal claims. *Id.* Regardless of the reasons for the decision, this court is bound by the decisions of the Supreme Court of Alabama in applying the law of the State of Alabama. *See Huddleston v. Dwyer,* 322 U.S. 232, 64 S.Ct. 1015, 88 L.Ed. 1246 (1944). Therefore, the question is whether Murphy and Miers were exercising discretion so as to be covered by state agent discretionary function immunity.

The Plaintiff argues that under *Town of Loxley v. Coleman,* 720 So.2d 907 (Ala. 1998), this court should conclude that Murphy and Miers were engaged in ministerial acts, not discretionary functions, and are therefore not entitled to immunity. In *Town of Loxley,* the court concluded that exercise of the defendant's function required due care, rather than difficult decision-making, because the defendant was driving in an attempt to avoid potholes. *Id.* at 909. *Town of Loxley* was pointed out by the Supreme Court of Alabama in *Ex parte Cranman* as an example of a case in which the line must be drawn between actions which are and are not entitled to immunity. *See Ex parte Cranman,* 2000 WL 772850 at *10. In *Ex parte Cranman,* however, the court acknowledged that even driving around potholes "involves judgment or discretion," but stated that the difference between that case and a case in which the agent is entitled to state agent immunity is that the discretion exercised in avoiding potholes was remote from the execution of governmental policy. *Id.* at *11.

In this case, although the Plaintiff has argued that Murphy and Miers merely failed to exercise due care in failing to ensure that Kevin Richards had been adequately searched for weapons, failing to handcuff Kevin Richards, and failing to notify the Detention Center that Kevin Richards was a suicide risk, it appears that Murphy and Miers made choices based on their assumption that a search had already been conducted, and that these choices required "personal deliberation, decision and judgment." *White v. Birchfield,* 582 So.2d 1085, 1087 (Ala.1991) (citation omitted). Under *Ex parte Cranman,* therefore, the exercise of discretion is entitled to discretionary function immunity if it was sufficiently tied to the execution of government policy.

In applying *Ex Parte Cranman* to this case, the Dale County Defendants have argued that listed functions three, four, and five apply in this case. That is, the Dale County Defendants argue that the agents' actions were in accordance with a rule, that they were taking a person into custody, and that they were releasing into another's custody a suicidal juvenile. While the listed provisions of *Ex parte Cranman* do not speak to county juvenile probation officers, as was earlier discussed, state-agent discretionary function immunity has been previously applied to county officials. The actions of Murphy and Miers as county officials occurred within the context of the continued detention of a juvenile who was originally detained by a law enforcement official, and the attempted release of the juvenile detainee, who was arguably of unsound mind because he was suicidal, into the custody of an institution. Therefore, because the Alabama Supreme Court has recognized that discretion exercised in the context of arresting or attempting to arrest persons, and discretion exercised in releasing persons who are of unsound mind, is discretion that is sufficiently within the scope of the execution of governmental policy so as to provide state agent immunity, the court concludes that Murphy and Miers are entitled to immunity. *See Ex parte Cranman,* 2000 WL 772850 at *12.[4]

---

**4.** Because Murphy and Miers are entitled to discretionary function immunity, this court

Although the Plaintiff has conceded that the § 1983 claims against Dale County and the Dale County Commission are due to be dismissed because there is no respondeat superior, the Plaintiff argues that Dale County and the Dale County Commission should still be held liable for the acts of Murphy and Miers which constitute violations of state law. The Plaintiff does not, however, respond to the argument of the Dale County Defendants that if Murphy and Miers are entitled to discretionary function immunity on the state law claims, then Dale County and the Dale County Commission also cannot be held liable on these claims.

In support of their argument, the Dale County Defendants cite this court to *Gore v. City of Hoover*, 559 So.2d 163 (Ala.1990). In *Gore*, the Alabama Supreme Court stated that because a city could only be held liable by respondeat superior, if the agent was immune from liability, the city was also immune from liability. *Id.* at 165–66. In so holding, the court relied on cases establishing that where a jury has found that the agent is not liable, the principal also cannot be held liable. *Id.*

This principle was later applied by the Alabama Supreme Court to county defendants in *Roden v. Wright*, 646 So.2d 605, 611 (Ala.1994). Significantly, the Alabama Supreme Court also stated that if the agent was entitled to discretionary function immunity in his individual capacity, "the other Marshall County defendants, whose liability is based on the doctrine of respondeat superior, are similarly entitled to immunity." *Id.* at 611. In so holding, the court relied on the *Gore* decision. *Id.*

Although *Gore* was subsequently overruled by *Franklin v. City of Huntsville*, 670 So.2d 848 (Ala.1995), the *Franklin* decision only overruled the language in *Gore*

indicating that a city could not be held liable for claims of negligent false arrest and imprisonment. *Id.* at 852. As the *Franklin* court pointed out, *Gore* was distinct from *Franklin* in that the *Gore* decision rested on the fact that the agent was immune, so the principal was also immune, while in *Franklin* there was no issue of "vicarious" immunity. *Id.* at 851. The Alabama Supreme Court's overruling *Gore* does not, therefore, mean that the holding of *Roden* that the county and county commission could not be held liable for tortious interference and similar tort claims when their agent was given discretionary function immunity is overruled.[5] In addition, *Ex parte Cranman* does not speak to this issue in any way, and so does not alter the rule. This court concludes, therefore, that since it has found that the agents, Murphy and Miers, are entitled to discretionary function immunity from liability as to the state law claims, their principals, Dale County and/or the Dale County Commission, which the Plaintiff seeks to hold liable on a respondeat superior theory, also cannot be held liable on the state law claims. Summary judgment is, therefore, due to be GRANTED on all of the state law claims against the County Defendants.

## V. CONCLUSION

For the reasons discussed, the court concludes that the Motion for Summary Judgment by Defendants City of Daleville, Jimmy Seaton, and Tim Hicks is due to be GRANTED in part and DENIED in part, the Motion for Summary Judgment by Defendants Willard Mitchell Yeomans and Southeast Alabama Services is due to be GRANTED, and the Motion for Summary Judgment filed by Defendants Dale County, Ruth Murphy, Sharon Miers, and the

will not address the argument that they are also entitled to quasi-judicial immunity.

**5.** Although this court may have indicated in *Hardy v. Town of Hayneville*, 50 F.Supp.2d 1176 (M.D.Ala.1999), that *Roden* has been overruled, that was perhaps an overstatement of the holding of *Franklin*. In any event,

*Hardy* was decided in the context of malicious prosecution and false imprisonment claims against a municipality, and because the claims at issue are not against a municipality and are not for false imprisonment or malicious prosecution, the court finds that *Hardy* is distinguishable and that the holding of *Roden* is appropriately applied here.

County Commission of Dale County is due to be GRANTED.

A separate Order will be entered in accordance with this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion entered on this date it is hereby ORDERED as follows:

1. The Plaintiff's Request for Oral Argument (Doc. # 89) is DENIED.

2. The Motion for Summary Judgment filed by Defendants City of Daleville, Jimmy Seaton, and Tim Hicks (Doc. # 72) is GRANTED as to the federal and state law claims against Jimmy Seaton and Tim Hicks, and as to the state law claims against the City of Daleville, and judgment is entered in favor of those Defendants and against the Plaintiff on those claims. The Motion for Summary Judgment is DENIED as to the federal claim for deliberate indifference under the Fourteenth Amendment to the United States Constitution against the City of Daleville.

3. The Motion for Summary Judgment filed by Defendants Willard Mitchell Yeomans and Southeast Alabama Services (Doc. # 77) is GRANTED and judgment is entered in favor of those Defendants and against the Plaintiff.

4. The Motion for Summary Judgment filed by Defendants Dale County, Ruth Murphy, Sharon Miers, and the County Commission of Dale County (Doc. # 83) is GRANTED. Judgment is entered in favor of those Defendants and against the Plaintiff.

The case will proceed against the City of Daleville on the Plaintiff's § 1983 claim of deliberate indifference under the Fourteenth Amendment to the United States Constitution.